UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
J.G., individually and on behalf of G.G.,
A child with a disability,

                            *Plaintiff*,

    --against—

NEW YORK CITY DEPARTMENT OF EDUCATION,

                            *Defendant.*

----------------------------------------------------------------X

DECLARATION

Case No. 23-cv-0959

      BENJAMIN M. KOPP declares, under penalty of perjury, that the following is true and correct:

1. I am an attorney at the Cuddy Law Firm, P.L.L.C., attorneys for the Plaintiff, and provide this declaration upon personal knowledge, in support of Plaintiff's motion for fees. The "base language" for this declaration, which I am reviewing and modifying as necessary for this matter, is the non-underlined language herein.

2. I have also reviewed the summation of my experience and qualifications in Mr. Cuddy's declaration (¶ 25), and such summation is an accurate reflection of my experiences and qualifications.

3. I am fully familiar with the briefing across these and prior federal actions for our Firm's clients, including the time that it takes to complete new briefing and reply in light of each new decision and the difficulties being encountered. In addition to representing families on both substantive and fee-related issues at the district court level, among various unsolicited

circumstances,[1] I have become the drafter for four out of the first six fee appeals by our Firm's clients, lead counsel for what are now the other appeals being heard in tandem, and—by virtue of trying to trim the latter role and its burden on the Court above—drafter of R&R objections. I am intimately familiar with which evidence has been—whether consistently or inconsistently—accepted in part or whole, rejected, or unaddressed.

4. **To be perfectly, respectfully, and bluntly clear,** as an officer of both this Court and the Court immediately above: (i) I take the duty to alleviate and prevent the burden on both seriously; (ii) I take representation and protection of my clients and their children seriously; and (iii) absent settlement on fee cases (which I would prefer most), I would otherwise like nothing more than to be able to have a fee petition that—including exhibits—is less than twenty pages, in order to return to accepting new intakes for the administrative level.

5. In my experience, it has been and remained a time-consuming endeavor to identify and provide the type and form of evidence—by process of elimination of items the Court has stated are not helpful and inclusion of what the Court has suggested it wants to see—that we believe have been at least suggested as acceptable. For example, early fee petitions began with declarations of local practitioners based upon their use in case law, and each time a Court stated that a declaration should (*e.g., Johnson* factors) or should not (*i.e.,* isolated incidents) indicate certain things, our Firm asked for those who could address their experiences and observations in such manners. It has also been my experience that, after receiving declarations from local practitioners that discuss the

---

[1] *I.e.,* having the earliest of the *circa* 2020 cases that DOE did not settle, having the first of our clients who elected to appeal, early and subsequent attempts to reduce time and improve evidence from my starting points, preventing/reducing repetition between appeals as more clients elected to do so, Britton Bouchard's departure from our Firm, etc.

*Johnson* factors and submitting those declarations, those declarations have been rejected with a statement that they did not address the *Johnson* factors.

6.      In my opinion, it is less time-consuming and less costly in the long-term and more likely to reach expedient resolution on questions such as the "prevailing rate in the community" to find evidence alternative to what has already been provided—as J.G. has done—than to have fee decisions accumulate until a more "bright line" rule is announced to measure when *Johnson* factor testimony, rate surveys, statistics, etc. reach "sufficient" status. As a caveat to that, I note that I would not want to be the attorney who drops all declarations and more traditional forms of fee petition evidence in favor of an alternative type of evidence, to later learn from a separate case's appeal that the most recent form of declaration that I would have otherwise used is deemed "sufficient".

**Motion Papers**

7.      For M.B., I conducted queries of the artificial intelligence tool currently known as ChatGPT- 4, concerning its knowledge of the legal industry, including rates that clients might expect to be charged by attorneys, as well as questions those clients might ask in order to determine how rates and the ultimate amount of fees might be impacted by various factors specific to a case. The intent was to provide context to what a parent—having ChatGPT-4 open and available to them—might take away in researching whether to hire an attorney and who to accept or reject. My questions and ChatGPT-4's responses are **Exhibit A** hereto.

8.      ChatGPT-4 was careful to note that several factors can influence what an attorney charges and on multiple occasions encouraged the user to reach out to legal services and law firms, as well as consult publications in the legal industry. However, it did note as of a knowledge cut off in September 2021, ChatGPT-4 had that an associate attorney with one to three years of experience

3

in New York City could charge anywhere from 200 to 500 per hour, with caution that such range was a broad estimate That could be affected by size and prestige of their firm complexity of a case and a specialty. I note that part of that particular response included the statement, "Lawyers who specialize in a certain type of law open (such as special education law, in this case) may command higher rates." Ex. A at 1. At another point, ChatGPT-4 indicated that an attorney with 25 years of experience word command a "premium rate" for IDEA matters and estimated that "a reasonable hourly rate might be in the range of 600 to 1200 or even more", noting that "this is a broad estimate and actual rates could be higher or lower based on various factors". Ex. A at 6.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this <u>11th</u> day of <u>August</u>, 2023.

                                                                                    __s/Benjamin M. Kopp_____
                                                                                     BENJAMIN M. KOPP, ESQ.