UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
J.G., individually and on behalf of G.G.,
a child with a disability,

                    *Plaintiff,*

                                                    Case No. 23-cv-0959(PAE)(JW)

      --against—

NEW YORK CITY DEPARTMENT OF EDUCATION,

                    *Defendant.*

------------------------------------------------------------------X


MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S MOTION FOR
FEES, COSTS, AND INTEREST


CUDDY LAW FIRM, PLLC
Francesca Teresa Antorino, Esq.
*Attorneys for Plaintiff*
5693 South Street Road
Auburn, NY 13021
Tel: 914-517-9553
fantorino@cuddylawfirm.com

# TABLE OF CONTENTS

**DESCRIPTION**                                                                              **PAGE**

TABLE OF CONTENTS................................................................................................i

TABLE OF AUTHORITIES ........................................................................................ii

PRELIMINARY STATEMENT .................................................................................1

STATEMENT OF FACTS .........................................................................................6

ARGUMENT ..............................................................................................................12

    I.  J.G.'S REQUESTED FEES ARE BASED UPON RATES PREVAILING IN
    THE COMMUNITY IN WHICH THE PROCEEDING AND ACTION AROSE
    FOR THE KIND AND QUALITY OF SERVICES FURNISHED, WITHOUT
    "BONUS" NOR "MULTIPLIER"..................................................................14

        A.  The "Community" is the Southern District of New York, with Facts
        and Contacts Arising from Manhattan and Proceedings in a
        Multidisciplinary Area Concerning Education, Disability, and Law....................14

        B.  The "Rates Prevailing" in the Geographic Southern District of New
        York ..................................................................................................15

            1.  Partners (Andrew K. Cuddy; Michael J. Cuddy, Jr., Jason
            Sterne)................................................................................17

            2.  Senior Attorneys (Kevin Mendillo, Justin Corretti, Benjamin
            Kopp, Francesca Antorino) and Associates (Kenneth Bush III; Erin
            E. Murray) ...........................................................................19

            3.  Paralegals (Shobna Cuddy; Cailin O'Donnell, Allyson Green,
            Amanda Pinchak, ChinaAnn Reeve) ........................................21

    II.   REDUCTIONS ARE NOT WARRANTED .............................................21

        A.  J.G.'s Rates with Her Counsel Are Comfortably within the Hourly
        Rates Prevailing in the Community for Similar Services by Attorneys of
        Reasonably Comparable Skill, Reputation, and Experience ................................22

        B.  J.G.'s Hours Billed Are Also within Acceptable Standards ...........................23

CONCLUSION ...........................................................................................................25

## TABLE OF AUTHORITIES

**CASES**                                                                   **PAGE**

*A.R. ex rel. R. V. v. N. Y. City Dep't of Educ.*
407 F.3d 65 (2d Cir.2005)....................................................................13-15

*Arbor Hill Concerned Citizens v. Cnty. of Albany*
522 F.3d 182 (2d Cir. 2008).................................................................14-15

*Awalt v. Marketti*
2018 WL 2332072 (N.D. Ill. 2018) ......................................................16 fn. 6

*C.G. v. New Haven Bd. of Educ.*
988 F.Supp. (D. Conn. 1997)................................................................16 fn. 7

*Cohen v. W. Haven Bd. of Police Comm'rs*
638 F.2d 496 (2d Cir. 1980).................................................................15

*E.S. v. Katonah-Lewisboro Sch. Dist.*
2011 WL 1560866 (S.D.N.Y. 2011) .....................................................18 fn. 10

*Espinosa v. Perez*
2020 WL 2950978 (S.D.N.Y. 2020) .....................................................16 fn. 6

*G.B. v. Tuxedo Union Fr. Sch. Dist.*
894 F.Supp.2d 415 (S.D.N.Y. 2012) .....................................................16 fn. 6

*Gierlinger v. Gleason*
160 F.3d 858 (2d Cir. 1998)..................................................................15

*Hensley v. Eckerhart*
461 U.S. 424 (1983) .............................................................................12

*H.W. v. New York City Dep't of Educ.*
2023 U.S. Dist. LEXIS 119375…………………………………………………24

*J.G. ex rel. N.G. v. Kiryas Joel Union Free Sch. Dist.*
777 F. Supp. 2d 606 (S.D.N.Y. 2011) ...................................................7 fn. 2

*K.F. v. NYC DOE*,
2011 WL 3586142 (S.D.N.Y. 2011) ......................................................18 fn. 10

*Kirsch v. Fleet Street, Ltd*
148 F.3d 149 (2d Cir. 1998)..................................................................23

*Millea v. Metro-North Railroad Co.*
658 F.3d 154 (2d Cir. 2011) ......................................................................................... 13

*O'Rourke v. Dominion Voting Sys., Inc.*
571 F.Supp.3d 1190 (D. Col. 2021) .........................................................................16 fn. 5

*P.G. v. Brick Tp. Bd. of Educ.*
124 F.Supp.2d 251 (D.N.J. 2000) .............................................................................16 fn. 7

*Polk v. N.Y. State Dept. of Corr. Servs.*
722 F.2d 23 (2d Cir. 1983) ............................................................................................ 15

*Reiter v. MTA NYC Trans. Auth.*
457 F.3d 224, 232-233 (2d Cir. 2006) .......................................................................... 19

*Sang Yong v. Torrance Unif. Sch. Dist.*
2018 WL 6185986 (C.D. Cal. 2018) .........................................................................16 fn. 6

*Sabatini v. Corning-Painted Post Area Sch. Dist.*
190 F.Supp.2d 509 (W.D.N.Y. 2001) .......................................................................16 fn. 7

*Schaffer v. Weast*
546 U.S. 49 (2005) ........................................................................................................ 13

*S.K. v. New York City Dept' of Educ.*
2023 U.S. Dist. LEXIS 40893 *; 2023 WL 2456693……………………………………………24

*Student Pub. Interest Research Group of N.J. v. AT&T Bell Laboratories,*
842 F.2d 1436, 1446 (3d Cir. 1988)……………………………………………………...…17

*Tiffany and Co. v. Costco Wholesale Co.*
2019 WL 120765 (S.D.N.Y. 2019) .........................................................................16 fn. 6

*Y.G. v. New York City Dept. of Educ.*
2022 WL 1046465 (S.D.N.Y. Apr. 7, 2022), *dkt'd for appeal*, 22-1184, *and cross-appeal*, 22-1187 .........................................................................................................................5, 23

## STATUTES, OTHER AUTHORITIES, AND MISCELLANEOUS

8 N.Y.C.R.R. § 200.5 ..................................................................................................... 14

20 U.S.C. § 1400 .......................................................................................................13-15

20 U.S.C. § 1415 ................................................................................................5-6, 12-14

28 U.S.C. § 1961 ........................................................................................................... 25

*Perez v. Sturgis Pub. Schs.*
S.Ct. Index 21-887 (Jan. 18, 2023) (Oral Argument Transcript)......................................................5

U.S. Const., Amend. XIV .........................................................................................................13

## PRELIMINARY STATEMENT

"This isn't litigation being run by a lot of rapacious lawyers, you know. This is litigation being run by parents who are trying to do right by their kids." *Perez v. Sturgis Pub. Schs.*, S.Ct. Index 21-887, Tr. 83 ln. 21-24 (Jan. 18, 2023) (Kagan, J.).

J.G., individually and on behalf of her son, G.G., worked to cooperate with DOE; and through her counsel at Cuddy Law Firm, P.L.L.C. DOE failed to hold mandated resolution sessions, repeatedly indicated it was investigating the matters for settlement, yet never referred the matter for settlement or made a settlement offer, and failed to timely implement the impartial hearing officer's order. Under these circumstances, there is no room for families "going it alone", to do their homework, learn the process, and one day become regularly successful *pro se*—unless, of course, they go to law school. As recently found by the Honorable Alvin K. Hellerstein:

> "Congress has left it to aggrieved parties and their lawyers to vindicate these rights. They are important rights and necessitate an award of fees where parents prevail. In evaluating the reasonableness of the fee, the court, among all other factors, should be sensitive to an adequate incentivization of counsel to take these cases. *See Kassim v. City of Schenectady*, 415 F.3d 246, 252 (2d Cir.2005); *Milwe v. Cavuoto*, 653 F.2d 80, 84 (2d Cir. 1981) ("The award of counsel fees is not intended to punish the defendant in any way. Rather it is to permit and encourage plaintiffs to enforce their civil rights. To declare those rights while simultaneously denying the award of fees would seriously undermine the declared congressional policy.") (citations omitted). **There are not many lawyers who take IDEA cases, perhaps because the fee structure has been so tight.** ***See, e.g., M.D. v. New York Dep't of Educ.*, 2021 WL 3030053 (S.D.N.Y. July 16, 2021); *H.C., v. New York City Dep't of Educ.*, 2021 WL 2471195, at \*4 (S.D.N.Y. June 17, 2021).** With these factors as a frame of reference, I evaluate Plaintiff's application."

*Y.G. v. New York City Dept. of Educ.*, 2022 WL 1046465 \*1 (S.D.N.Y. Apr. 7, 2022) (emphasis added). J.G.'s now moves under the Individuals with Disabilities Education Act ("IDEA"), 20

U.S.C. § 1415(i)(3), for her fees and costs, in the current amount of $113,484.62 plus any amount that becomes necessary hereafter, with an account for delay[1] and post-judgment interest thereupon.

### STATEMENT OF FACTS

G.G. was classified by DOE as having a speech-language impairment; and had been diagnosed with attention deficit hyperactivity disorder (ADHD), language disorder, developmental coordination disorder, acute stress disorder, and learning disability in reading, writing, mathematics. Declaration of Michael J. Cuddy, Jr. ("M. Cuddy Decl.") ¶ 5, Exs. D (Findings of Fact and Decision [FOFD]) at 8. J.G. alleged denials of a Free Appropriate Public Education ("FAPE") regarding G.G.'s education for the 2017-2018, 2018-2019, 2019-2020, 2020-2021, and 2021-2022 school years. M. Cuddy Decl. ¶¶ 6 Ex. A (Due Process Complaint), E. Murray Decl. ¶¶ 5, 23, 27, Ex. A, B (Due Process Complaint and amended Due Process Complaint).

With legal assistance from CLF, J.G. initiated due process hearings for two cases, which encompassed the 2017-2018, 2018-2019, 2019-2020, 2020-2021, and 2021-2022 school years. pursuant to the IDEA (20 U.S.C. § 1415(f)(3)) and Part 200 of the New York State Education Commissioner's Regulations. M. Cuddy Decl. ¶¶ 6, Ex. A at 1, E. Murray Decl. ¶¶ 5, 23, 27, Ex. A at 1, B at 1; *see, generally*, Declaration of Andrew K. Cuddy ("A. Cuddy Decl."), Ex. U, V (hearing-level billing).

J.G. alleged several primary factors contributing to the multiple year denial of FAPE, including: (i) failure to conduct a timely annual review, (ii) failure to evaluate in a timely manner, (iii) failure to provide appropriate services, (iv) failure to implement, (v) failure to provide an

---

[1] The Complaint, dated February 6, 2023, which advises that J.G. planned to seek prejudgment interest as part of her fee claim, was filed roughly two months after an increase in rates at CLF. Under the Second Circuit's decision in *Lochren v. Cnty. of Suffolk*, J.G. notes that the proper course would be, instead, to grant fees at her counsels' now-current rates that reasonable paying clients in the market would expect to be charged. 344 F.Appx. 706, 709 (2d Cir. 2009).

appropriate program and placement, (vi) failure to evaluate in all areas of suspected disability, (vii) failure to provide appropriate methodologies, (viii) failure to develop a transition plan, (ix) failure to develop appropriate goals, and (x) failure to convene an appropriate IEP team. M.B. sought several remedies, including tuition for a specialized school. M. Cuddy Decl., Ex. A at 2, E. Murray Decl., Ex. A at 5-8. J.G., to remedy these denials of FAPE, sought DOE evaluations or in the alternative, independent evaluations, compensatory services, tuition to Winston Preparatory School, and transportation costs. M. Cuddy Decl., Ex. A at 3, E. Murray Decl. Ex. B at 8-9. As to the tuition relief addressed between the parties and before the IHO, because J.G. sought reimbursement/direct funding for a unilateral placement, she had the burden of demonstrating the "appropriateness of that placement."[2]

Despite the seriousness of J.G.'s allegations, DOE did not hold a mandated resolution session and did not appear ready to substantively discuss settlement at any point as its representative continuously indicated the matter was being investigated for settlement. M. Cuddy Decl. ¶¶ 7, 11, 15-16; E. Murray Decl. ¶ 28, 34, 37, A. Cuddy Decl. ¶ 14.

The situation in both matters escalated to hearing after the DOE did not refer the matter to settlement or make any settlement offer. M. Cuddy Decl. ¶ 15, E. Murray Decl. ¶ 30, 36, 37.

Case Number 185247

The DOE representative informed CLF that it would not be defending FAPE for the first time on October 24, 2019- three months after the due process filing. M. Cuddy Decl. ¶ 16, Ex. A. The DOE offered six (6) exhibits, which were entered into evidence. M. Cuddy Decl. ¶ 18, 20. CLF offered fifteen (15) exhibits, which were entered into the record. M. Cuddy Decl. 19, 20. The DOE did not present any witnesses. M. Cuddy Decl. ¶ 22. CLF presented four (4) witnesses for

---

[2] *J.G. ex rel. N.G. v. Kiryas Joel Union Free Sch. Dist.*, 777 F. Supp. 2d 606, 641 (S.D.N.Y. 2011); *see also* N.Y. Educ. Law § 4404 (1)(c).

J.G.'s case. M. Cuddy Decl. ¶ 23, 27. The DOE cross examined three (3) of J.G.'s witnesses. M. Cuddy Decl. 25, 28, 29. IHO Feinberg scheduled March 21, 2021 for the Parties to submit closing briefs. M. Cuddy ¶ 32. The DOE failed to submit a closing brief despite indicating it would at the February 10, 2021 hearing. M. Cuddy Decl. ¶ 34. On April 27, 2021, IHO Feinberg issued a findings of fact and decision. M. Cuddy Decl. ¶ 35, Ex. C. Neither party appealed the decision. M. Cuddy Decl. 37.

Case Number 221890

At the March 2, 2022 status conference, the DOE informed CLF that it would call two witnesses for the first time almost four months after the initial filing. E. Murray Decl. ¶ 38, 39, 40, Ex. B. The DOE offered eighteen (18) exhibits, which were entered into evidence. E. Murray Decl. ¶ 64. CLF offered thirty (30) exhibits, eight (8) of which were withdrawn as duplicative of the DOE's exhibits. E. Murray Decl. ¶ 65. The DOE presented one (1) witness despite previously indicating it would be calling two (2) witnesses. E. Murray Decl. ¶ 40, 62. Ms. Murray cross examined the DOE's witnesses. E. Murray Decl. ¶ 68. Neither the DOE attorney nor IHO asked the DOE's witness any additional questions after Ms. Murray's cross-examination. E. Murray Decl. ¶ 69. CLF called four (4) witnesses for J.G.'s case. E. Murray Decl. 33, 36, 39, 44. The DOE attorney cross-examined two (2) of the four (4) witnesses. E. Murray Decl. 80, 82, 84, 87. IHO Finkelstein also asked questions of two (2) of J.G.'s witnesses. E. Murray Decl. 85. Both Parties agreed to submit written closing statements. E. Murray Decl. ¶ 89. On August 2, 2022, IHO Finkelstein issued a decision on the merits, finding the DOE failed to meet its obligations under State and Federal law, J.G. met her burden of proof, and no equitable basis barred public funding of relief. E. Murray Decl. ¶ 93, 94, Ex. C. Neither party appealed the decision. E. Murray ¶ 95.

## II. This Action

J.G. made a fee demand through DOE's designated contacts in July 2022 for case number 185427 and in August 2022 for case number 221890, without substantive response. A. Cuddy Decl. ¶¶ 31, 33. J.G. commenced this action on February 10, 2023, pursuant to Section 1983 and the fee-shifting provisions of the IDEA, seeking an award of IDEA "prevailing party" fees, costs, and interest. *See* ECF No. 1. Federal Court billing was provided toward the end of February 2023. F. Antorino Decl. ¶ 6. The DOE provided an offer on May 26, 2023. F. Antorino Decl. ¶ 7. CLF requested information in order to review the invoices and respond. F. Antorino Decl.  ¶ 8. DOE reported that the "biggest issues with the billing in the admin[strative] proceedings are with time spent drafting the [due process complaints] and closing brief". ¶ 9. CLF made a counteroffer on July 11, 2023. F. Antorino Decl. ¶ 10. DOE never responded to CLF's counteroffer. F. Antorino Decl. ¶ 11.

## III. Plaintiff's Attorneys

**Andrew Cuddy** has been admitted to the New York Bar in 1996 and practiced law for as long, and since 2001, litigated hundreds of special education due process hearings in New York and across the country. A. Cuddy Decl. ¶ 18, Ex. B at 1. As President and Managing Attorney of CLF, Andrew Cuddy supervises legal and support staff on IDEA cases across all levels of jurisdiction. *Id.* His prowess is recognized with selection to the "Super Lawyers" list annually from 2015 – 2023, an honor limited to the top 5% of all attorneys. *Id.* He regularly imparts his legal expertise through special education law presentations for CLE sessions and numerous organizations, and authored a seminal book in the field: *The Special Education Battlefield: A Parent's Guide to the Impartial Due Process Hearing*, published in 2007. *Id.*

**Michael Cuddy**, admitted to the New York Bar in 1989, combines legal expertise with a deep understanding of educational administration, evident from his Master of Science in Educational Administration in 1994. M. Cuddy Decl. ¶ 3, fn. 1; A. Cuddy Decl. ¶ 19, Ex. B at 2. His diverse experience spans teaching in public high schools (1983-1985), handling employment and labor matters as a public school district administrator (1985-1994), serving as a school district attorney (1990-1994), and teaching "Education Law" at SUNY-Brockport (1994-1996). *Id.* He held an administrative role with the Ithaca City School District (1996-2006) and, since 2009, has represented New York parents in hundreds of IDEA cases with CLF. *Id.* His expertise has been frequently sought, as evidenced by his presentations on special education law topics for various organizations. *Id.*

**Francesca Antorino,** senior attorney, was admitted to practice law in New York in 2019, after graduating from Brooklyn Law School's two-year accelerated juris doctor program in 2017. A. Cuddy Decl. 23, Ex. B-3-5. Ms. Antorino interned for a New York City special education law firm prior to working with our Firm's Westchester office from October 2017-January 2023. *Id.* As of January 2023, Ms. Antorino has operated out of our Auburn, NY office. *Id.* Ms. Antorino is the co-chair of the New York State Bar Association's Education Law Committee and has presented CLEs on various special education topic for a variety of organizations, including Brooklyn Bar Association, New York Academy of Trial Lawyers, Orange County Bar Association, and more. *Id.* Ms. Antorino was selected as a "Rising Star" with "Super Lawyers", an honor limited to the top 2.5% of attorneys in the state, for both 2022 and 2023. While Francesca Antorino's work for clients within the Southern District of New York almost exclusively involves low-income, fee-shifting dependent clients, our Firm regularly charges and is paid $425 per hour for our similarly-experienced attorneys' services, including IDEA litigation. *Id.*

**Erin Murray**, admitted to practice law in New York since 2020 and Florida since 2019, graduated magna cum laude from Barry University's Dwayne O. Andreas School of Law in May 2019. A. Cuddy Decl. ¶ 21, Ex. B at 6-7. She joined CLF in October 2020 as an associate attorney. *Id.* She exhibited academic excellence and leadership as a senior editor for the Barry Law Review and President of the Human Trafficking Awareness Coalition. *Id.* Her significant experience with the Children's Home Society of Florida, where she was an educational advocate, gave her practical insight into the development and implementation of IEPs and special education services. *Id.* While Erin Murray's work for clients within the Southern District of New York almost exclusively involves low-income, fee-shifting dependent clients, our Firm regularly charges and is paid $375.00 per hour for our similarly-experienced attorneys' services, including IDEA litigation.

**Kenneth Bush III** was admitted to practice law in New York in 2016, after graduating from Western New England University School of Law in 2015. A. Cuddy Decl. ¶ 24, Ex. B-8-9. Mr. Bush joined CLF in January 2016 where he had represented parents in impartial due process hearings, drafted estate planning documents and special needs trusts, and handled guardianship proceedings. *Id.* Mr. Bush also represented parents in federal fee litigation against New York City Department of Education. *Id.* Mr. Bush was an associate attorney with CLF until 2019 and then rejoined the CLF as of counsel in 2022. While Kenneth Bush's work for clients within the Southern District of New York is exclusively involves low-income, fee-shifting dependent clients, our Firm regularly charges and is paid $425 per hour for our similarly-experienced attorneys' services, including IDEA litigation.

**Shobna Cuddy** attended Modesto Junior College and joined CLF in July 2007 as a paralegal and office manager, became the Firm-wide office administration paralegal in 2012, and

as the senior paralegal for all of CLF's offices, has an integral role in training new paralegals[3] on navigating Defendant's various internal regions, offices, systems, and procedures in assisting our attorneys and clients. A. Cuddy Decl. ¶ 27, Ex. B at 10.

**Cailin O'Donnell** graduated from Houghton College (B.A., Communications) in 2011, held significant and transferrable customer service positions in New York and Florida, and worked as the Intake and Implementation Coordinator—including as a more general paralegal—in our Auburn office between November 2019 and September 2022. A. Cuddy Decl. ¶ 28, Ex. B at 11.

CLF regularly charges and is paid his **customary rate of** for our similarly-experienced attorneys' services, including IDEA litigation. For IDEA litigation and similar legal services, CLF regularly charged and has been paid: (i) **$550 per hour** for Michael Cuddy, Andrew Cuddy, and Jason Sterne, Michael Cuddy and Andrew Cuddy currently have a 2023 rate of $600 per hour; (ii) **$500 per hour** for Kevin Mendillo; (iii) **$425 per hour** for Justin Coretti, Benjamin Kopp, and Kenneth Bush (iv) **$400 per hour for** Francesca Antorino; (v) **$375 per hour** for Erin Murray; and (vi) **$225 per hour** as a blended paralegal rate. A. Cuddy Decl. ¶¶ 17-22, Ex. B; Affirmation of Barbara J. Ebenstein ("Ebenstein Aff.") ¶ 8; Affirmation of Matthew J. Delforte ("Delforte Aff.) ¶ 18; *see* A. Cuddy Decl., Exs. C-L, U-V.

## ARGUMENT

Though a matter of discretion for the Court to determine whether it will award fees, this Court should determine that 20 U.S.C. § 1415(i)(B) is satisfied by DOE's concession. *Compare with Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983) ("Where a plaintiff has obtained excellent results, [her] attorney should recover a fully compensatory fee"); *see* M. Cuddy Decl., Ex. B. Murray Decl., Ex. C. Here, J.G. obtained excellent results in both administrative cases. *Id.*

---

[3] Because IDEA is a more specialized area of practice, CLF has additional training support videos and shadowing timelines for new paralegals. A. Cuddy Decl. ¶ 20, fn. 16.

The IDEA was intended to ensure that all children, regardless of intelligence or ability, receive an adequate education "that emphasizes special education and related services designed to meet their unique needs." 20 U.S.C. § 1400(d)(1)(A); *see Millea v. Metro-North Railroad Co.*, 658 F.3d 154, 166-167 (2d Cir. 2011) ("By enacting a fee-shifting provision…Congress has already made the policy determination that…claims serve an important public purpose disproportionate to their cash value. We cannot second-guess this legislative policy decision"); *see Schaffer v. Weast*, 546 U.S. 49, 51 (2005); *A.R. ex rel. R. V. v. N. Y. City Dep't of Educ.*, 407 F.3d 65, 72 (2d Cir.2005). All are equal before the law. *See, e.g.,* U.S. Const., Amend. XIV.

After the general grant of jurisdiction (20 U.S.C. § 1415[i][3][A]) and discretion (20 U.S.C. § 1415[i][3][B]) to award fees to a prevailing party, such as J.G., the amount-determinative provisions more specifically direct that: (i) the fees awarded "shall be based on rates prevailing in the community," without "bonus or multiplier" (20 U.S.C. § 1415[i][3][C]); (ii) school districts have the opportunity to cut off future fees with a settlement offer a certain time prior to hearing (20 U.S.C. § 1415[i][3][D]), unless the family was substantially justified in rejecting the offer (20 U.S.C. § 1415[i][3][E]); and (iii) a listing of challenges (i.e., parent's unreasonable protraction, rate "unreasonably exceeds…prevailing", "time…excessive", or failure to provide notice of complaint) to fees (20 U.S.C. § 1415[i][3][F]) that "shall not apply…if the court finds that the State or local educational agency unreasonably protracted the final resolution of the action or proceeding or there was a violation of [20 U.S.C. § 1415]" (20 U.S.C. § 1415[i][3][G]). DOE's extensive delays in "running out the clock" concerning the mandatory resolution period, not providing a definitive answer regarding settlement status, not communicating positions, and not promptly implementing a final, unappealed IHO's decision—whether taken individually or

altogether—are objectively[4] unreasonable, prolonged the proceedings, and delayed the final resolution of a proceeding; and much of this conduct led DOE to push and extend the hearing date well beyond the 75 days from DPC by which the IHOs must issue decisions. 20 U.S.C. § 1415(f)(1)(B); 34 C.F.R. §§ 300.510, 300.515; 8 N.Y.C.R.R. § 200.5(j)(2). Accordingly, the reasonable fee is one that does not permit DOE to attack, prolong, and accrue fees this matter further with "subsection (F)" challenges. 20 U.S.C. § 1415(i)(3)(G). In any event, as described below, J.G..'s request is reasonable and well-supported in its entirety.

I.      **J.G.'S REQUESTED FEES ARE BASED UPON RATES PREVAILING IN THE COMMUNITY IN WHICH THE PROCEEDING AND ACTION AROSE FOR THE KIND AND QUALITY OF SERVICES FURNISHED, WITHOUT "BONUS" NOR "MULTIPLIER".**

The IDEA's reasonable fee must be "based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished", without "bonus or multiplier…in calculating the fees awarded". *A.R. ex rel. R.V. v. N.Y.C. Dep't of Educ.*, 407 F.3d 65, 79 (2d Cir. 2005); 20 U.S.C. §1415(i)(3)(C). It is presumed "that a reasonable paying client would in most cases hire counsel…at least…whose rates are consistent with those charged locally." *Arbor Hill v. Cnty. of Albany*, 522 F.3d 182, 191 (2d Cir. 2008).

A.      **The "Community" is the Southern District of New York, with Facts and Contacts Arising from Manhattan and Proceedings in a Multidisciplinary Area Concerning Education, Disability, and Law.**

G.G.'s placement at Winston Preparatory School and DOE's principal office were in New York County,[5] and thus, the primary contacts pushing and pulling J.G. into deciding between DOE's IEP or a unilateral placement at Winston Preparatory School. *A.R. ex rel. R.V. v. N.Y.C.*

---

[4] This Court should take a fresh, independent inquiry of what is objectively "unreasonable", as other decisions have traveled down the slippery slope of declining to find anything—even sanctions—unreasonable.

[5]     https://www.winstonprep.edu/our-campuses/transitions-nyc;     https://www.nyc.gov/site/dcas/business /dcasmanagedbuildings/tweed-courthouse.page; ECF 1 (¶¶ 9-10), 12 (¶¶ 9-10).

*Dep't of Educ.*, 407 F.3d 65, 79-81 (2d Cir. 2005); *see Polk v. N.Y. State Dept. of Corr. Servs.*, 722 F.2d 23, 25 (2d Cir. 1983) ("Normally a district court, awarding attorney's fees under [a fee-shifting statute], will consider the prevailing rates in the district in which the court sits"). This is, of course, with consideration of other market factors. *Arbor Hill v. Cnty. of Albany*, 522 F.3d 182, 192 (2d Cir. 2008) ("The legal communities of today are increasingly interconnected. To define markets simply by geography is too simplistic. Sometimes, legal markets may be defined by practice area").

### B.      The "Rates Prevailing" in the Geographic Southern District of New York.

Courts must look to "current market rates" prevailing in the community in determining a reasonable fee. *Gierlinger v. Gleason*, 160 F.3d 858, 882 (2d Cir. 1998); *see Arbor Hill v. Cnty. of Albany*, 522 F.3d 182, 192 (2d Cir. 2008) ("…our holding honors the Supreme Court's emphasis on the need to use the approximate market rate for an attorney's services in calculating the presumptively reasonable fee"). "[F]ees that would be charged for similar work by attorneys of like skill in the area" are the "starting point for determination of a reasonable award." *Cohen v. W. Haven Bd. of Police Comm'rs*, 638 F.2d 496, 506 (2d Cir. 1980). This "contemplates a case-specific inquiry", and although courts may consider their familiarity with rates and take judicial notice of prior awards, "'a reasonable hourly rate' is not ordinarily ascertained simply by reference to rates awarded in prior cases" when there is evidence that a rate does not prevail. *Farbotko v. Clinton Cnty. of New York*, 433 F.3d 204, 208-209 (2d Cir. 2005).

The current market rates prevailing in the Southern District of New York for law firm Partners practicing IDEA (20 U.S.C. § 1400, *et seq*.) cases are $450 – $675, primarily dependent upon legal and related experience; and their Associate counterparts' rates, also primarily dependent upon legal and related experience, are $350 – $500. In addition to the local IDEA practitioners who regularly inform the courts of these rates and CLF's reasonable paying clients throughout

15

New York State who have agreed and paid CLF's rates (including the 2023 increase), this range is independently corroborated by multiple objective, recent studies that are accepted by courts.[6] A. Cuddy Decl. ¶¶ 4-5, Exs. A, B, C-E, F-H, K-L; Appx. I-IV. These ranges have also been supported by inquiry to consumer-available artificial intelligence tool, ChatGPT-4, which estimated some rates to be much higher for special education law in New York City. B. Kopp Decl. ¶¶ 7-8, Ex. A. With further cross-check that contingent fee-shifting rates for prevailing parents' "private attorneys general" have been considered naturally higher than rates for salaried or otherwise contracted school district attorneys,[7] it is appropriate that DOE's rates with outside counsel (even during COVID) are *lower* than what a reasonable paying family could expect their own counsel to charge. *See* Cuddy Decl., Ex. N. Indeed, DOE's own records indicate its repeated willingness to pay the same (and higher) rates on cases with both fewer and greater final fee totals. A. Cuddy Decl., Ex. M (including settlement payouts such as 94% of Andrew Cuddy's case in 2016 with original rate of $500 and fees and costs of $13,232.50, and 85% of Gary Mayerson's case in 2018 with original rate of $675, resulting in effective rate of $573.75),  The accumulation of all available (via Westlaw) IDEA fee awards in the Southern District of New York indicates that occasional discretionary increases, even in the aggregate, have not nearly kept pace with twenty-five years of inflation. A. Cuddy Decl., Ex. I. In addition, the IDEA's fee-shifting provision was intended to pull attorneys from fee-only work to fee-shifting work so that families of limited means could obtain

---

[6] Real Rate Report (by Wolters Kluwer): *see, e.g., Espinosa v. Perez*, Index 18-cv-8855-LGS-SN, 2020 WL 2950978 *5 (S.D.N.Y. 2020) (Rep. & Rec.), *adopt'd at* 2020 WL 1130743 (S.D.N.Y. 2020); *Sang Yong v. Torrance Unif. Sch. Dist.*, 2018 WL 6185986 *7 (C.D. Cal. 2018) ("Courts have found that the Real Rate Report is a much better reflection of true market rates than self-reported rates in all practice areas") (internal marks omitted); *G.B. v. Tuxedo Union Fr. Sch. Dist.*, 894 F.Supp.2d 415, fn. 15 (S.D.N.Y. 2012).
Annual Survey of Law Firm Economics (by ALM Intelligence and National Law Journal): *see, e.g., O'Rourke v. Dominion Voting Sys., Inc.*, 571 F.Supp.3d 1190, 1197 (D. Col. 2021); *Tiffany and Co. v. Costco Wholesale Co.*, 2019 WL 120765 *10 (S.D.N.Y. 2019); *Awalt v. Marketti*, 2018 WL 2332072 *4 (N.D. Ill. 2018).
[7] *E.g., Sabatini v. Corning-Painted Post Area Sch. Dist.*, 190 F.Supp.2d 509, 515 (W.D.N.Y. 2001); *C.G. v. New Haven Bd. of Educ.*, 988 F.Supp. 60, 68-69 (D. Conn. 1997); *P.G. v. Brick Tp. Bd. of Educ.*, 124 F.Supp.2d 251, 262 (D.N.J. 2000).

counsel. Without rates that are in line with what fee-only attorneys are charging, there is no incentive for attorneys to engage in fee-shifting work. In *Student Pub. Interest Research Group of N.J. v. AT&T Bell Laboratories,* 842 F.2d 1436, 1446 (3d Cir. 1988), the Third Circuit held:

> Courts that try to establish public interest market rates by looking to the going rate for public interest work therefore do not examine an independently operating market governed by supply and demand, but rather recast fee awards made by previous courts into "market" rates. Courts adopting this micromarket approach, therefore, engage in a tautological, self-referential enterprise. They perpetuate a court-established rate as a "market" when that rate in fact bears no necessary relationship to the underlying purpose of relying on the marketplace: to calculate a reasonable fee sufficient to attract competent counsel.

Plaintiff argues that this has become the case in IDEA attorney fee cases in the SDNY and requests the Court consider the relevant market rate when it awards attorney's fees in the instant matter rather than relying on fee awards made by SDNY in previous IDEA proceedings.

### 1.    Partners (Andrew K. Cuddy; Michael J. Cuddy, Jr.; Jason Sterne)

The 2022 Real Rate Report ("RRR", conducted and published by Wolters Kluwer) indicates that New York City law firm Partners' litigation rates (1Q=$475, Med.=$675, Mean=$808, 3Q=$1,088), though still more expensive than the national market, resemble nationwide Partner rates (1Q=$430, Med.=$653, Mean=$749, 3Q=$969) while weighing down overall New York City Partner rates (1Q=$625, Med.=$1,050, Mean=$1,076, 3Q=$1,538). A. Cuddy Decl., Ex. C. Under the RRR, having twenty-one years or more of experience marks higher overall New York City Partner rates (1Q=$637, Med.=$1,070, Mean=$1,091, 3Q=$1,560). *Id.* This RRR indicates a continuation of the trend reflected in prior RRRs (*i.e.*, 2016, 2020, 2021) that New York City has a wider gap between its lower-/higher-paid attorneys; and this is also reflected in Washington, D.C.'s *Laffey* matrix, which would provide a Partner with twenty-one years of experience higher than the first quartile of their corresponding New York City rate and lower than

the corresponding median. A. Cuddy Decl., Exs. C, F-H. The rates assigned for CLF in IDEA fee cases by the SDNY have typically been below the lower quartile of the survey data. This oral explanation is visualized in the Appendixes I-IV adhered to.

The above RRR rates are corroborated, for instance, in the 50th Annual Survey of Law Firm Economics (2022) ("ASLFE", conducted and published by The National Law Journal and ALM Intelligence). For instance, the RRR nationwide Partner rates (1Q=$430, Med.=$653, Mean=$749, 3Q=$969) are similar to the ASLFE nationwide Partner/Shareholder rates (1Q=$450, Med.=$600, Mean=$682, 3Q=$900)[8] and the 1Q's and Medians of the ASLFE subsets for nationwide Equity Partners/Shareholders (1Q=$445, Med.=$575, Mean=$653, 3Q=$765), Northeast Equity Partners/Shareholders (1Q=$455, Med.=$530, Mean=$668, 3Q=$715), Mid-Atlantic[9] Equity Partners/Shareholders (1Q=450, Med.=$573, Mean=$697, 3Q=$860),[10] and Mid-Atlantic Equity Partners/Shareholders with 21-30 years of experience (1Q=$450, Med.=$565, Mean=$736, 3Q=$1,005). A. Cuddy Decl., Ex. D. In accordance with the trend from multiple "Real Rate Reports" (*i.e.*, 2016, 2020, 2022), the *Laffey* matrix states rates for more seasoned

---

[8] The ASLFE also includes a "Ninth Decile" in its survey results, showing the upper-end outlier for each category. A. Cuddy Decl., Ex. D. Because the RRR does not show this outlier for its survey, it is not shown for the ASLFE's comparison to the RRR; however, it is included in the chart at Ex. D to A. Cuddy Decl.

[9] For a "Broad Region", the ASLFE sorts New York into one (Northeast) among three other (Midwest, South, West) regions; and for "Narrow Region", it sorts New York into one (Middle Atlantic) among seven other (New England, South Atlantic, East North Central, West North Central, West South Central, Mountain, Pacific) regions.

[10] Notably, the ASLFE provides a rate of **$378** for 25th to 29th year partners in **2011**, with a subsequent rate of $686 for 25th to 29th year partners in 2021. A. Cuddy Decl., Ex. D at 4. In **2011** (at which time Mr. Cuddy was a 15th-year head of firm), the Honorable P. Kevin Castel awarded to him (in *K.F. v. NYC DOE*, No. 10-cv-5465-PKC, 2011 WL 3586142 [S.D.N.Y. 2011]) a rate of **$375** in the Southern District of New York for an IDEA hearing against DOE, with His Honor finding that the case had been "neither novel nor complex", DOE had a "lay advocate, a special education administrator" to represent it, Jesse Cole Cutler (who has about the same experience as me) was charging $350, Adrienne J. Arkontaky (before she became CLF's Vice President) charged $350, Barbara J. Ebenstein (who has more experience than Mr. Cuddy and had been an IHO) had a "package" for representation based on rates of $450 at the beginning of 2010 and $500 at the end of 2010, Gary S. Mayerson (who also has more experience than Mr. Cuddy) billed at $600 with his associates ranging between $250 and $425, and then-Chief Judge Preska had then-recently reduced another 14-year partner litigating IDEA matters to $350 (in *E.S. v. Katonah-Lewisboro Sch. Dist.*, No. 09-cv-4770-LAP, 2011 WL 1560866 *5 [S.D.N.Y. 2011]). In 2021, Mr. Cuddy charged a rate of $550 for his services. Also in 2021, Jesse Cole Cutler was billing $650, and Gary S. Mayerson billed $675 for direct services and $800 for supervising associates. A. Cuddy Decl., Ex. A at 4, 55.

Partners lower than their ASLFE counterparts from New York (keeping in mind that ASLFE's results are also somewhat lower than New York City due to the inclusion of other attorneys classified as being in the Mid-Atlantic and broader Northeast). *See* A. Cuddy Decl., Exs. C-D, F-H.

Separately, the National Association of Legal Fee Analysis' ("NALFA")[11] December 2022 Litigation Hourly Rate Survey & Report, which uses a four-tier system (*i.e.,* Tier 1 - $0-400, Tier 2 - $401-650, Tier 3 - $651-900, Tier 4 - $901-1,110) to categorize rates, provided that 39% of all New York rates are in Tier 2 ($401-650), 27% are in Tier 3 ($651-900), and the high-low tiers are near-evenly divided at 15% (Tier 4 - $901+) and 19% (Tier 1 - $0-400). A. Cuddy Decl., Ex. E. No New York attorney(s) responded with rates lower than $251, and only four attorneys indicated rates between $251 and $300. A. Cuddy Decl., Ex. E at 12. The NALFA report also states that Tier 1 ($0-400) ranges of rates are those "charged below market value", whereas Tier 4 ($901-1,110) ranges of rates are "premium" and at the "high end of the distribution curve". A. Cuddy Decl., Ex. E at 6. The Second Circuit has indicated, in *Reiter v. MTA NYC Trans. Auth.*, that attorneys' generosity in agreeing to rates below the market is improper as a starting point; and accordingly, NALFA's findings—which include Tier 2 rates accounting for the majority of rates even by first-to-third-year attorneys—indicate that $401 is the least-experienced attorney's starting point, not senior attorneys. 457 F.3d 224, 232-233 (2d Cir. 2006).

2. **Senior Attorneys (Kevin Mendillo, Justin Coretti, Benjamin Kopp, Francesca Antorino) and Associates (Erin E. Murray; Kenneth Bush)**

The 2022 RRR indicates that New York City law firm Associates' litigation rates (1Q=$323, Med.=$460, Mean=$545, 3Q=$729), resemble nationwide Associate rates (1Q=$329, Med.=$485, Mean=$546, 3Q=$703) while significantly weighing down overall New York City

---

[11] NALFA indicates in its survey that it is a Section 501(c)(6) non-profit professional association.

Associate rates (1Q=$460, Med.=$713, Mean=$731, 3Q=$980). A. Cuddy Decl., Ex. C. Under the RRR, having seven years or more of experience marks a wider range (with the same median) among overall New York City Associate rates (1Q=$439, Med.=$713, Mean=$740, 3Q=$1,015). *Id.* Notably, this RRR indicates a continuation of the trend that New York City, as compared to Washington, D.C., has a slightly lower first quartile and higher third quartile of associate rates—a trend that is also reflected as between the above rates and Washington, D.C.'s *Laffey* matrix (which is used for IDEA matters), which would enter slightly more for a fourth-to-seventh-year associate than the first quartile of New York City associates having seven or more years of experience. A. Cuddy Decl., Ex. C.

The above RRR Associate rates are corroborated in the 50th ASLFE. For instance, the RRR nationwide Associate rates (1Q=$329, Med.=$485, Mean=$546, 3Q=$703) are similar to the ASLFE nationwide Associate rates (1Q=$330, Med.=$480, Mean=$510, 3Q=$675) and the 1Q's and Medians of the ASLFE subsets for Northeast Associates (1Q=$320, Med.=$485, Mean=$543, 3Q=$750), Mid-Atlantic Associates (1Q=$325, Med.=$485, Mean=$543, 3Q=$750), and Mid-Atlantic Associates with 6-7 years of experience (1Q=$300, Med.=$360, Mean=$490, 3Q=$715). A. Cuddy Decl., Ex. D. However, NALFA's report indicates that its survey respondents—as to experience levels, New York City location, firm size, and/or simple "Associate" title—strongly pointed to Tier 2 ($401-650) rates as the majority of rates for even first-year attorneys. *Id.*

NALFA's Report, which uses a four-tier system (*i.e.,* Tier 1 - $0-400, Tier 2 - $401-650, Tier 3 - $651-900, Tier 4 - $901-1,110) to categorize rates, provided that 39% of all New York rates are in Tier 2 ($401-650), 27% are in Tier 3 ($651-900), and the high-low tiers are near-evenly divided at 15% (Tier 4 - $901+) and 19% (Tier 1 - $0-400). A. Cuddy Decl., Ex. E. No New York attorney(s) responded with rates lower than $251, and only four attorneys indicated rates between

20

$251 and $300. A. Cuddy Decl., Ex. E at 12. Significantly, the NALFA report also states that Tier 1 ($0-400) ranges of rates are those "charged below market value", whereas Tier 4 ($901-1,110) ranges of rates are "premium" and at the "high end of the distribution curve". *Id.* at 6.

### 3. Paralegals (Shobna Cuddy; Cailin O'Donnell; ChinaAnn Reeve; Allyson Greene; Amanda Pinchak)

Nationally, the RRR indicates that paralegal rates in the first quartile are $150 per hour, with a median of $225 per hour, in the third quartile $325 per hour. A. Cuddy Decl., Ex. C at 1. While paralegal rates are not nearly as analyzed as attorneys in surveys—and not all attorneys have addressed what they charge for their paralegals—those who have addressed their paralegal rates with IDEA practitioners in the Southern District of New York almost all have at least one paralegal whose rate is near or above $150, consistent with the RRR and the attorney-attached trend with Washington, D.C., in that the *Laffey* matrix includes a slightly higher paralegal/law clerk rate of $208. A. Cuddy Decl., Exs. A at 20 ($125-300), 26 ($150), 36 ($100-200), 68 ($140), H at 3. As with CLF's attorneys, clients for both the Valhalla and Auburn offices have agreed on the $225 paralegal rate for CLF's paralegals. A. Cuddy Decl., Exs. K-L. Notably, paralegals began receiving fee awards of $125 per hour in 2011 and 2012 for IDEA cases in this District (which the Consumer Price Index indicates would provide a value of about $153-155 today).

## II.   REDUCTIONS ARE NOT WARRANTED.

J.G. and her counsel facilitated the prompt final resolution of the proceeding and action (and even sought for it to be resolved without litigation even sooner), billed reasonably within the hourly rates prevailing within the community and expectations for hours considering the circumstances under which the services were provided, and provided all appropriate notices to DOE. Across several cases, DOE typically raises objections to rates and hours billed, which J.G. will briefly address.

**A.     J.G.'s Rates with Her Counsel Are Comfortably within the Hourly Rates Prevailing in the Community for Similar Services by Attorneys of Reasonably Comparable Skill, Reputation, and Experience.**

Consistent with the prevailing rates discussed in detail at Point I above, CLF regularly charges and is paid each timekeeper's customary rate or for similarly-experienced attorneys' services, including IDEA litigation, including: (i) **$550 per hour** for Michael Cuddy, Andrew Cuddy, and Jason Sterne, Michael Cuddy and Andrew Cuddy currently have a 2023 rate of $600 per hour; (ii) **$500 per hour** for Kevin Mendillo; (iii) **$425 per hour** for Justin Coretti, Benjamin Kopp, and Kenneth Bush (iv) **$400 per hour for** Francesca Antorino; (v) **$375 per hour** for Erin Murray; and (vi) **$225 per hour** as a blended paralegal rate. A. Cuddy Decl. ¶¶ 18-30, Ex. B; Affirmation of Barbara J. Ebenstein ("Ebenstein Aff.") ¶ 8; Affirmation of Matthew J. Delforte ("Delforte Aff.") ¶ 18; *see* A. Cuddy Decl., Exs. C-L, U-V. These rates conform to each person's role, experience, and overall services.

For Andrew Cuddy and Michael Cuddy, who are each Partners at CLF, and Jason Sterne, who had been practicing since 1998, the rate is below the First Quartile concerning key expectations for how much higher their rates could be in consideration of their decades of experience and their presence in the New York City market.[12]A. Cuddy Decl., Ex. C at 1, 2, 5, 6; Ebenstein Decl.. This remains largely the same concerning the ASLFE, particularly considering how far the rates of other regional fora pull rates downward as compared to the higher prevailing market in New York City. A. Cuddy Decl., Ex. D. This remains the same for Kevin Mendillo, Justin Coretti, Francesca Antorino, Erin Murray, Benjamin Kopp, and Kenneth Bush. A. Cuddy Decl., Ex. C at 1, 2, 5, 6; Ebenstein Decl.,  A. Cuddy Decl., Ex. D. In another vein, although information on paralegal rates is more sparse, the available data and trends in the remainder of the legal market

---

[12] This and other charts will be appended as full-page charts.

(as compared to those available for paralegals) suggest that the national median of $225 per hour is still reasonably within the rates expected for paralegals assisting with New York City cases. A. Cuddy Decl., Ex. C at 1.

Additionally, all of these rates comport with the severe need in the community for attorneys to take on the tens of thousands of IDEA cases. A. Cuddy Decl. ¶¶ 6-15. We request the Court view the rates in the broader community of lawyers rather than limiting its view to the community of special education lawyers. The purpose of the fee-shifting provision of the IDEA is to attract lawyers from fee-based work to fee-shifting work so that families of limited means have the ability to obtain representation in these proceedings.

**B.     J.G.'s Hours Billed Are Also within Acceptable Standards.**

To calculate the reasonable hours expended, courts look to "contemporaneously created time records" and exclude "hours that are excessive, redundant, or otherwise unnecessary." *Kirsch v. Fleet Street, Ltd*, 148 F.3d 149, 173 (2d Cir. 1998). In doing so, "a district court may exercise its discretion and use a percentage deduction as a practical means of trimming fat from a fee application." *Y.G.*, 2022 WL 1046465 at *3, *quoting M.D. v. New York City Dep't of Educ.*, 2018 WL 4386086 at *4 (S.D.N.Y. Sept. 14, 2018) (quoting, in turn, *McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA Pension Tr. Fund*, 450 F.3d 91, 96 [2d Cir. 2006]).

J.G. has provided CLF's billing that sets forth the clear, necessary time expended for her son's case; and has further provided declarations and the pertinent parts of the hearing records and correspondence explaining the context for the time spent. A. Cuddy Decl. ¶¶42-46, Exs. T – V. While DOE typically concerns itself with issues on drafting, review, and client communications, these were all reviewed carefully and found to be appropriate. A. Cuddy Decl. ¶¶ 35-46.

In settlement negotiations, the DOE indicated that it had an issue with the "time spent drafting the [due process complaints] and closing briefs in these two matters." F. Antorino Decl. ¶ 9. In Case No. 185427, Michael Cuddy spent 10.3 hours to prepare a 17-page closing brief. M. Decl. ¶ 33, Ex. B. In Case No. 221890, Erin Murray spent 15.2 hours to prepare a 14-page closing statement, which is an appropriate amount of time in comparison to other special education practitioners. E. Murray Decl. ¶ 91, 92. In *H.W. v. New York City Dep't of Educ.,* Ms. Spencer Walsh, who has over 20 years of legal experience and practiced in the field of education law since 2008, spent 23.01 hours preparing her 15-page closing brief. *H.W. v. NYC DOE* 2023 U.S. Dist. LEXIS 119375. In *S.K. v. New York City Dep't of Educ.,* Ms. Kule-Korgood, who has rough 29 years of experience in special education law, spent 72.17 hours to research and write her closing brief. *S.K. v. New York City Dept' of Educ.*, 2023 U.S. Dist. LEXIS 40893 *; 2023 WL 2456693. Comparatively, CLF's time spent on preparing written closings aligns with the time spent by other special education practitioners. Although the length and thoroughness of the Plaintiff's closing statements and brief varied from the closing statement submitted in *A.D. v. New York City Dep't of Educ.,* the Court in *A.D.* awarded Gina DeCrezscenzo, P.C. three (3) hours of time or half an hour a page for a closing statement that primarily regurgitate the testimony of the three witnesses, used boilerplate statement of the law governing FAPE, and included legal argument." Given this ruling, the Plaintiff here should be entitled to the roughly one hour a page as it billed here.

**C.    DOE's "routine and noncomplex" argument is inapplicable here.**

J.G.'s evidence and hearing negate any notion of reduction. Handling IDEA matters requires significant knowledge in law, education, psychology, and various medical fields, with resources that are often beyond a low-income family's reach. *D.B. v. NYC DOE,* 2019 U.S. Dist. LEXIS 68880 *12 (S.D.N.Y. Apr. 22, 2019)(noting the "increasing complexity of IDEA matters

and the need for parents of children with special needs to obtain specialists in this area to effectively litigate their claims"). Additionally, complexity and DOE's perception of "routine are not the sole reasons that families need highly skilled attorneys for IDEA cases with DOE. CLF's heightened experience and skill prevented the time that it would have taken less experienced counsel to work through inefficiencies in negotiation and litigation. This further rings true for filings that must often be structured with headings that bring readability and structure to otherwise dense facts across dozens of records. The "routine" nature of the cases are because the DOE routinely deprives students of FAPE and the DOE should not be rewarded for systematic problems that create litigation.

## CONCLUSION

Based upon the foregoing and the instant motion's accompanying declarations and exhibits thereto, this Court should grant M.B.s motion for fees, costs, and interest in the total requested amount of $113,484.62 (Cuddy Decl. ¶ 47) in attorneys' fees and costs, plus amounts associated with any necessary reply, all with post-judgment interest (28 U.S.C. § 1961) thereupon, and any additional or different relief as the Court deems just and proper.


Dated: August 21, 2023                                  s/ Francesca Teresa Antorino
         Auburn, New York                               Francesca Teresa Antorino, Esq.