UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

J.G., *individually and on behalf of*, G.G.,

                                        Plaintiff,

                    -v-

NEW YORK CITY DEPARTMENT OF EDUCATION,

                                        Defendants.

---

23 Civ. 959 (PAE)

<u>OPINION & ORDER</u>

PAUL A. ENGELMAYER, District Judge:

This decision resolves a motion for attorneys' fees and costs under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq.* Plaintiff J.G. sues the New York City Department of Education ("DOE") after prevailing in two administrative hearings before impartial hearing officers ("IHO"). Through the Cuddy Law Firm, J.G. requests attorneys' fees and costs, totaling $113,484.62, plus interest, covering its representation of her in the underlying administrative proceedings and the present fees action. For the following reasons, the Court grants the motion for fees and costs, but in an aggregate sum ($53,050.13) below that sought.

## I.      Background

G.G. is a child with a disability covered by the IDEA. Dkt. 1 ("Compl.") at 1. He has been diagnosed with attention deficit hyperactivity disorder ("ADHD"), language disorder, developmental coordination disorder, and acute stress disorder. Dkt. 17 ("M. Cuddy Decl.") ¶ 5. His parent, J.G., initiated two due process hearings on his behalf against DOE. Compl. at 2, 4. She was represented by the Cuddy Law Firm in both hearings.

### A. IDEA Action Initiated on July 23, 2019

On July 23, 2019, J.G. filed her first due process complaint with DOE ("Case No. 185427"). M. Cuddy Decl., Ex. A. ("2019 DPC"). It alleged that DOE had failed to provide G.G. with a free appropriate public education ("FAPE") for the 2017–2018 and 2018–2019 school years. Compl. at 2. J.G. complained that DOE had failed to conduct timely annual reviews and evaluations; provide appropriate educational services; and implement Special Education Teacher Support Services ("SETSS") mandated by G.G.'s January 2018 Individualized Education Program ("IEP"). 2019 DPC at 2. J.G. sought, *inter alia*, that DOE: (1) provide appropriate evaluations; (2) convene a committee on special education to recommend appropriate programming; and (3) provide all mandated SETSS and related remedial services. *Id.* at 3.

IHO Rona Feinberg held an impartial hearing, which consisted of sessions on January 12 and February 10, 2021. M. Cuddy Decl. ¶¶ 20, 26. DOE and J.G., represented by the Cuddy Law Firm, submitted exhibits into evidence. *Id.* ¶¶ 18–19. J.G. presented four witnesses, three of whom DOE cross-examined. *Id.* at ¶¶ 23, 25, 27–29. DOE did not oppose J.G.'s request for relief; it merely asked that the rate for compensatory services be a "reasonable fair-market rate, and not excessive." *Id.*, Ex. 3 ("2021 Decision") at 5–6. On March 15, 2021, the Cuddy Law Firm submitted a closing brief; DOE did not. M. Cuddy Decl. ¶¶ 33–34. On April 27, 2021, the IHO issued a decision, finding that DOE had not demonstrated that it had provided G.G. with a FAPE for the 2017–2018 and 2018–2019 school years. 2021 Decision at 6. It ordered DOE to provide 500 hours of compensatory education for G.G. *Id.* at 16. Neither party appealed the IHO's order. M. Cuddy Decl. ¶ 37.

**B. IDEA Action Initiated on November 22, 2021**

On November 22, 2021, J.G., represented again by the Cuddy Law Firm, filed a second due process complaint with DOE ("Case No. 221890"). Dkt. 18 ("Murray Decl.") ¶ 23. On December 13, 2021, J.G. amended her complaint. *Id.*, Ex. 2 ("2021 DPC"). The complaint alleged that G.G. had been denied a FAPE for the 2019–2020, 2020–2021, and 2021–2022 school years, citing DOE's failure to properly construct G.G.'s October 2020 and December 2021 IEPs in accordance with psychological evaluations. *Id.* at 5–8. As a result of these failings, J.G. sought an alternative placement and enrolled G.G. in Winston Preparatory School ("Winston Prep"). *Id.* at 8. J.G. requested that DOE reimburse G.G.'s tuition at Winston Prep for the 2021–2022 school year and provide compensatory academic instruction for the 2019–2020 and 2020–2021 school years. *Id.* at 8–9.

IHO Sharyn Finkelstein convened an impartial hearing, which consisted of sessions on May 3 and July 5, 2022. Murray Decl. ¶¶ 72, 75. At the hearing, the Cuddy Law Firm presented four witnesses, two of whom were cross-examined by the DOE. *Id.* ¶¶ 80, 82, 84, 87. The DOE presented one witness, who was cross-examined by associate Erin Murray. *Id.* ¶¶ 62, 68. On July 22, 2022, both parties submitted written closing statements. *Id.* ¶ 90. On August 2, 2022, IHO Finkelstein issued a decision, in which she determined that DOE had failed to provide G.G. with a FAPE for the 2019–2020, 2020–2021, and 2021–2022 school years. *Id.*, Ex. 3 ("2022 Decision") at 21. She found G.G.'s placement at Winston Prep appropriate and ordered DOE to reimburse tuition for Winston Prep, provide G.G. with appropriate vocational evaluations, and fund 300 hours of compensatory academic instruction. *Id.* at 21.

### C. J.G.'s Motion for Attorneys' Fees

In July and August 2022, J.G. made fee demands for the first and second administrative proceedings. Dkt. 21 ("A. Cuddy Decl.") ¶¶ 31, 33. On February 6, 2023, J.G. filed a complaint in this Court seeking reasonable attorneys' fees and costs under the IDEA. Compl. On May 26, 2023, DOE offered to settle the suit for $54,300, but J.G. declined. Dkt. 29 ("Opp. Mem.") at 5.

On August 21, 2023, J.G. moved for attorneys' fees and costs in the amount of $113,484.62 ($41,872.50 for Case No. 185427; $51,020.12 for Case No. 221890; and $20,592.00 for the federal action), Dkt. 14, and filed a supporting memorandum of law, Dkt. 22 ("Pl. Mem.") at 7. *See also* A. Cuddy Decl., Exs. 19–21 (documenting fee amount breakdown). On September 25, 2023, DOE opposed the motion and submitted a memorandum of law. Opp. Mem. On October 6, 2023, J.G. filed a reply. Dkt. 30 ("Reply").

## II.   Applicable Legal Principles

The IDEA aims "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs." 20 U.S.C. § 1400(d)(1)(A). States that receive certain federal funds must "offer parents of a disabled student an array of procedural safeguards designed to help ensure the education of their child." *Polera v. Bd. of Educ.*, 288 F.3d 478, 482 (2d Cir. 2002). Parents are entitled to bring complaints regarding the "provision of a free appropriate public education" to their child, 20 U.S.C. § 1415(b)(6), and to have those complaints heard by an IHO, *see id.* § 1415(f)(1); N.Y. Educ. L. § 4404(1).

"In the United States, parties are ordinarily required to bear their own attorney's fees— the prevailing party is not entitled to collect from the loser." *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598, 602 (2001) (citation omitted).

However, under the IDEA, if a parent of the child with a disability is the "prevailing party" in the litigation, the district court has discretion to award the parent "reasonable attorneys' fees" and costs incurred.  20 U.S.C. § 1415(i)(3)(B)(i); *see also J.C. v. Reg'l Sch. Dist. 10, Bd. of Educ.*, 278 F.3d 119, 121 (2d Cir. 2002).  The award may cover work performed before the IHO or in federal court.  *See A.R. ex rel. R.V. v. N.Y.C. Dep't of Educ.*, 407 F.3d 65, 84 (2d Cir. 2005) (affirming award of fees incurred during IHO proceedings and before district court).  Prevailing parties are also entitled to reimbursement for the reasonable costs incurred in litigating an IDEA case.  *G.B. ex rel. N.B. v. Tuxedo Union Free Sch. Dist.*, 894 F. Supp. 2d 415, 443 (S.D.N.Y. 2012).

To determine the award and the amount of fees, the court must engage in a two-step inquiry.  First, the court must determine whether the party seeking to enforce the fee-shifting provision is the "prevailing party."  *Mr. L. v. Sloan*, 449 F.3d 405, 405–07 (2d Cir. 2006).  If so, in calculating fees, the court examines whether the fees are reasonable in light of the litigation.  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  The district court has the discretion to reduce the award if the fees or hours reported are excessive or misleading.  *Id.* at 437.

### A. Prevailing Party

To be a prevailing party under the IDEA, a plaintiff must achieve (1) "some material alteration of the legal relationship of the parties" that is (2) "judicially sanctioned."  *A.R.*, 407 F.3d at 67 (internal quotation marks omitted).  The Second Circuit has held that a party who receives agency-ordered relief on the merits of their claim is a "prevailing party" for the purposes of the IDEA.  *Id.* at 75.  A party need not recover on all of her claims in order to be considered the "prevailing party."  *K.L. v. Warwick Valley Cent. Sch. Dist.*, No. 12 Civ. 6313 (DLC), 2013 WL 4766339, at *5 (S.D.N.Y. Sept. 5, 2013), *aff'd* 584 F. App'x 17 (2d Cir. 2014).

5

However, she "must succeed on a significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Id.* (internal quotation marks omitted).

### B.   Calculation of Fees

The starting point for determining the presumptively reasonable fee award is the "lodestar" amount, which is "the product of a reasonable hourly rate and the reasonable number of hours required by the case." *Millea v. Metro-N. R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011). The lodestar is not "conclusive in all circumstances," and may be adjusted when it fails to "adequately take into account a factor that may properly be considered in determining a reasonable fee." *Id.* at 167 (citations omitted).

### 1.   Reasonable Hourly Rates

Under the fee-shifting provision of the IDEA, the court determines a reasonable hourly rate "based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished." 20 U.S.C. § 1415(i)(3)(C). A reasonable rate is one a reasonable, paying-per-hour client would pay for the same services rendered. *K.F. v. N.Y.C. Dep't of Educ.*, No. 10 Civ. 5465 (PKC), 2011 WL 3586142, at *3 (S.D.N.Y. Aug. 10, 2011), *adhered to as amended*, 2011 WL 4684361 (S.D.N.Y. Oct. 5, 2011), at *3 (citing *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 190 (2d Cir. 2008)). The community used for purposes of IDEA fee-shifting litigation is the district in which the issue arose—specifically, where the student was denied a FAPE. *Id.* at *2. However, in determining reasonable hourly rates, it is also important to look to the area of legal practice at issue. That is because legal markets are today so interconnected that it is no longer meaningful, in assessing a reasonable rate, to look at geographic location alone. *See Arbor Hill*, 522 F.3d at 192.

In determining a reasonable rate, district courts are also to consider case-specific variables known as the "*Johnson* factors." These include:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at 187 n.3. "A district court need not recite and make separate findings as to all twelve *Johnson* factors, provided that it takes each into account in setting the attorneys' fee award." *E.F. ex rel. N.R. v. N.Y.C. Dep't of Educ.*, No. 11 Civ. 5243 (GBD) (FM), 2014 WL 1092847, at *3 (S.D.N.Y. Mar. 17, 2014) (internal citations and quotation marks omitted).

### 2. Reasonable Hours

Once a reasonable rate of pay has been calculated, it is multiplied by a reasonable number of hours expended to determine the award amount. In this process, the court has discretion to disregard hours viewed as "excessive, redundant, or otherwise unnecessary." *Bliven v. Hunt*, 579 F.3d 204, 213 (2nd Cir. 2009) (quoting *Hensley*, 461 U.S. at 434). To determine the reasonableness of hours spent on a matter, "[t]he district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award" by a reasonable percentage. *Hensley*, 461 U.S. at 436–37; *see also McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA Pension Tr. Fund*, 450 F.3d 91, 96 (2d Cir. 2006) ("A district court may exercise its discretion and use a percentage deduction as a practical means of trimming fat from a fee application." (internal quotation marks and citations omitted)); *J.R. v. N.Y.C. Dep't of Educ.*, No. 19 Civ. 11783 (RA), 2021 WL 3406370, at *5 (S.D.N.Y. Aug. 4, 2021) (citing cases). As Justice Kagan has instructed, "trial courts need not, and indeed should not, become green-

eyeshade accountants. The essential goal in shifting fees . . . is to do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838 (2011).

### C. Costs

A district court may also award reasonable costs to the prevailing party. 20 U.S.C. § 1415(i)(3)(B)(i)(I). The term "costs" includes costs incurred in connection with work yielding fees covered by a fee award, as well as the specific types of costs set out in 28 U.S.C. § 1920, the general provision governing the taxation of costs in federal court. *See Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 297–98 (2006); *G.B.*, 894 F. Supp. 2d at 443. Commonly compensable costs include reasonable filing and process server costs. *See* 28 U.S.C. § 1920; *G.B.*, 894 F. Supp. 2d at 443.

### III.    Discussion

### A. Overview of J.G.'s Fee and Cost Requests

It is undisputed that J.G. prevailed in the two proceedings before the IHO. The sole issue before this Court is whether the fees and costs J.G. has requested are reasonable. A. Cuddy Decl., Ex. 19. As to both fees and costs, J.G. seeks compensation for work performed at the successive hearings before the IHO (the "first administrative proceeding" and the "second administrative proceeding"), and in this follow-on fees litigation.

As to the first administrative proceeding, J.G. seeks fees to reflect hours worked by three attorneys (Andrew Cuddy, Jason Sterne, and Michael Cuddy) and five paralegals (Allyson Green, Amanda Pinchak, Cailin O'Donnell, Erin Murray,[1] and Shobna Cuddy). Before the IHO, Michael Cuddy served as lead counsel. M. Cuddy Decl. at 2–5. J.G. seeks a fee award totaling

---

[1] Murray is a licensed attorney but billed only for administrative tasks for this case.

$41,872.50 for the following work during the first administrative proceeding, as summarized below.[2]

### Case No. 185427: Attorneys' Fees

| Attorney | Rate | Hours | Total |
|---|---|---|---|
| Andrew Cuddy | $550.00 | 4.70 | $2,585.00 |
| Andrew Cuddy (2023) | $600.00 | 0.20 | $120.00 |
| Jason Sterne | $550.00 | 8.20 | $4,510.00 |
| Michael Cuddy | $550.00 | 55.20 | $30,360.00 |
| Total Attorney Fees | | 68.30 | $37,575.00 |

### Case No. 185427: Paralegal Fees

| Paralegal | Rate | Hours | Total |
|---|---|---|---|
| Allyson Green | $225.00 | 0.10 | $22.50 |
| Amanda Pinchak | $225.00 | 5.20 | $1,170.00 |
| Cailin O'Donnell | $225.00 | 10.00 | $2,250.00 |
| Erin Murray | $225.00 | 0.50 | $112.50 |
| Shobna Cuddy | $225.00 | 3.30 | $742.50 |
| Total Paralegal Fees | | 19.10 | $4,297.50 |

As to the second administrative proceeding, J.G. seeks fees to reflect hours worked by four attorneys (Andrew Cuddy, Erin Murray, Justin Coretti, and Michael Cuddy) and four paralegals (Allyson Green, Cailin O'Donnell, ChinaAnn Reeve, and Shobna Cuddy).  A. Cuddy Decl., Ex. 20.  Before the IHO, Erin Murray served as lead counsel.  Murray Decl. ¶ 6.  J.G. seeks a fee award totaling $50,912.50 for the following work during the second administrative proceedings, as summarized below.[3]

### Case No. 221890: Attorneys' Fees

| Attorney | Rate | Hours | Total |
|---|---|---|---|
| Andrew Cuddy | $550.00 | 3.40 | $1,870.00 |
| Erin Murray | $375.00 | 97.90 | $36,712.50 |
| Justin Coretti | $425.00 | 7.70 | $3,272.50 |
| Michael Cuddy | $550.00 | 7.10 | $3,905.00 |
| Total Attorney Fees | | 116.10 | $45,760.00 |

---

[2] The data reflected in the chart can be found in Exhibit 19 of Andrew Cuddy's declaration.

[3] The data reflected in the chart can be found in Exhibit 20 of Andrew Cuddy's declaration.

### Case No. 221890: Paralegal Fees

| Paralegal | Rate | Hours | Total |
|---|---|---|---|
| Allyson Green | $225.00 | 3.70 | $832.50 |
| Cailin O'Donnell | $225.00 | 4.50 | $1,012.50 |
| ChinaAnn Reeve | $225.00 | 11.70 | $2,632.50 |
| Shobna Cuddy | $225.00 | 3.00 | $675.00 |
| Total Paralegal Fees | | 22.90 | $5,152.50 |

As to the fees litigation before this Court, J.G. seeks fees to reflect hours worked by seven attorneys (Andrew Cuddy, Benjamin Kopp, Erin Murray, Francesca Antorino, Kenneth Bush, Kevin Mendillo, and Michael Cuddy) and four paralegals (Cailin O'Donnell, ChinaAnn Reeve, Francesca Antorino,[4] and Shobna Cuddy). A. Cuddy Decl., Ex. 21. Francesco Antorino served as lead attorney. *See* Compl. (filed by Antorino). J.G. seeks a fee award totaling $20,190 for the following work during the instant fees litigation, as summarized below.[5]

### Instant SDNY Action: Attorneys' Fees

| Attorney | Rate | Hours | Total |
|---|---|---|---|
| Andrew Cuddy | $600.00 | 5.70 | $3,420.00 |
| Benjamin Kopp | $425.00 | 0.80 | $340.00 |
| Erin Murray | $375.00 | 4.10 | $1,537.50 |
| Francesca Antorino | $425.00 | 24.60 | $10,455.00 |
| Kenneth Bush | $425.00 | 2.80 | $1,190.00 |
| Kevin Mendillo | $500.00 | 0.90 | $450.00 |
| Michael Cuddy | $600.00 | 0.50 | $300.00 |
| Total Attorney Fees | | 39.40 | $17,692.50 |

### Instant SDNY Action: Paralegal Fees

| Paralegal | Rate | Hours | Total |
|---|---|---|---|
| Francesca Antorino[6] | $225.00 | 0.90 | $832.50 |
| ChinaAnn Reeve | $225.00 | 2.00 | $2,632.50 |
| Cailin O'Donnell | $225.00 | 6.60 | $1,012.50 |
| Shobna Cuddy | $225.00 | 1.60 | $675.00 |
| Total Paralegal Fees | | 11.10 | $2,497.50 |

---

[4] Francesca Antorino is a licensed attorney but billed for certain administrative tasks under a paralegal rate.

[5] The data reflected in the chart can be found in Exhibit 21 of Andrew Cuddy's declaration.

[6] Antorino is a licensed attorney but billed for certain administrative tasks under a paralegal rate.

Finally, J.G. seeks reimbursement of $664.12 for costs incurred during the administrative and fees litigation phases.  The costs incurred are summarized below.[7]

### Costs

| Hearing | Expense | | Cost |
|---------|---------|---|------|
| Case No. 185427 | Postage | | $3.50 |
| Case No. 185427 | Printing Cost | | $151.00 |
| Case No. 221890 | Postage | | $6.12 |
| Case No. 221890 | Printing Cost | | $101.50 |
| Federal Action | Filing Fee | | $402.00 |
| Total Costs | | | $664.12 |

**B.  Reasonable Rates**

The Court has considered all *Johnson* factors in its analysis.  Its discussion here centers on the facts it has found determinative.

### 1.  Analysis Applicable to all Attorneys and Paralegals

IDEA litigation is undoubtedly a specialized field in which attorneys seek to vindicate vitally important interests of children in special education.  J.G., however, has not adduced any evidence that this case presented novel or complex legal or factual issues relative to the typical single-plaintiff IDEA case.  In the first administrative proceeding, DOE conceded its failure to provide a FAPE to G.G.  It did not oppose J.G.'s request for relief, submit a closing brief, or appeal the IHO's decision.  2021 Decision at 5–6; M. Cuddy Decl. ¶¶ 33–34, 37.  In the second administrative proceeding, DOE opposed J.G.'s requested relief and contended it provided G.G. a FAPE for the 2019–2020, 2020–2021, and 2021–2022 school years.  But the IHO-convened hearing was brief; it consisted of two sessions each lasting around two to three hours.  *See*

---

[7] The data reflected in the chart can be found in Exhibits 19–21 attached to Andrew Cuddy's declaration.

Murray Decl. ¶¶ 72, 75. The DOE presented only one witness and cross-examined only two of the four witnesses presented by J.G. *See id.* ¶¶ 63, 77, 81, 85; 2022 Decision at 5. J.G.'s attorneys undoubtedly spent time and resources preparing for the hearings in the two administrative proceedings. But the case unavoidably qualifies as "a fairly standard action for special education and related services." *J.R.*, 2021 WL 3406370, at *4.

The relevant community for the purposes of determining a reasonable rate is the Southern District of New York, where this litigation and the underlying administrative proceedings are centered.[8] The relevant practice area is special education law, specifically IDEA litigation. In recent years, "[t]he prevailing market rate for experienced, special-education attorneys in the New York area . . . [has been] between $350 and $475 per hour." *Id.* at *3 (citing *M.D. v. N. Y.C. Dep't of Educ.*, 17 Civ. 417 (JMF), 2018 WL 4386086, at *3 (S.D.N.Y. Sept 14, 2018) (collecting cases)); *C.D. v. Minisink Valley Cent. Sch. Dist.*, No. 17 Civ. 7632 (PAE), 2018 WL 3769972, at *6 (S.D.N.Y. Aug. 9, 2018) (same)). "For associates with three or fewer years of experience in such litigation, courts in this District have typically approved rates of $150–$275." *C.D.*, 2018 WL 3769972, at *7. "Paralegals, depending on skills and experience, have generally garnered between $100 and $125 per hour in IDEA cases in this District." *R.G. v. N.Y.C. Dep't of Educ.*, No. 18 Civ. 6851 (VEC), 2019 WL 4735050, at *3 (S.D.N.Y. Sept. 26, 2019) (collecting cases).

J.G. argues that the Court should not rely exclusively on the rates awarded in prior cases in determining the reasonable hourly rate to apply in this case. J.G.'s point that a court "cannot

---

[8] For Case No. 185427, G.G. was attending a public charter high school in the Bronx, in this District. 2021 Decision at 4. Case No. 221890 granted relief in the form of tuition reimbursement for Winston Preparatory School, also located in this District. Pl. Mem. at 15.

rely *only* on awards in prior cases in setting the rate" is well-taken. *G.B. ex rel. N.B.*, 894 F.

Supp. 2d at 429. Instead, "the equation in the caselaw of a 'reasonable hourly fee' with the

'prevailing market rate' contemplates a case-specific inquiry into the prevailing market rates for

counsel of similar experience and skill to the fee applicants counsel," and it "requires an

evaluation of evidence proffered by the parties." *Farbotko v. Clinton County.*, 433 F.3d 204, 209

(2d Cir. 2005).

J.G. seeks hourly rates of $550–$600 for senior attorneys Michael Cuddy, Andrew

Cuddy, and Jason Sterne; $425 for mid-level associates Justin Coretti, Benjamin Kopp, Kenneth

Bush, and Francesca Antorino; $375 for junior associate Erin Murray; and $225 for all

paralegals. These hourly rates exceed those awarded in this District, for attorneys of comparable

experience, and indeed for some of these very attorneys, as documented below.

As ostensible support for an award at her proposed hourly rates, J.G. points primarily to

four sources: (1) the Real Rate Report conducted by Wolters Kluwer; (2) the 2022 Litigation

Hourly Rate Survey and Report conducted by the National Association of Legal Fee Analysis

("NALFA"); (3) the 50th Annual Survey of Law Firm Economics ("ASLFE"); and (4) the *Laffey*

Matrix. After evaluating these sources, the Court finds each problematic, and thus declines to

give them substantial weight in its determination of reasonable hourly rates.

The Real Rate Report (the "Report") analyzes law firm rates in select U.S. cities.

"Although not dispositive, the Court may rely on survey evidence as a cross-check on any fee

award to ensure that it is reasonable." *Cortes v. Juquila Mexican Cuisine Corp.*, No. 17 Civ.

3942 (RER), 2021 WL 1193144, at *5 (E.D.N.Y. Mar. 29, 2021) (cleaned up). But courts in this

District have received the Real Rate Report's results with skepticism. For example, Judge

Forrest, after reviewing the 2012 Real Rate Report, found:

The report's methodology is opaque; it claims to be based on "the actual hours and fees law firm personnel billed" from 2007–2011 but does not explain whether its sample is representative of the New York market as a whole—i.e., whether its sample is skewed toward litigation partners working for large corporate law firms—or how it normalizes the data. . . . . Finally, in capturing data from 2007–2011, the report reflects historic rates more than current rates.

*Hicks v. Vane Line Bunkering, Inc.*, No. 11 Civ. 8158 (KBF), 2013 WL 1747806, at *9

(S.D.N.Y. Apr. 16, 2013), *aff'd sub nom.*, *Hicks v. Tug Patriot*, 783 F.3d 939 (2d Cir. 2015). *See*

*also Cortes v. Juquila Mexican Cuisine Corp.*, No. 17 Civ. 3942 (RER), 2021 WL 1193144, at

*5 (E.D.N.Y. Mar. 29, 2021) ("The Real Rate Report is insufficient to meet Plaintiffs' burden to

demonstrate that the requested rates conform to market rates for similar services—representation

of employees in wage-and-hour litigation—in this District.").

For much the same reasons, this Court finds the Report a dubious resource on which to

rely in calculating reasonable hourly rates for the attorneys who litigated the present case. The

Report provides data of the hourly rates charged by litigation partners and associates in New

York. A. Cuddy Decl., Exs. 3, 6, 7. But that data is not specific to lawyers specializing in IDEA

and special education litigation. Instead, it identifies the rates used in general by litigation

partners and associates at New York law firms. The New York private practice litigation market

is, however, extremely heterogenous. Firm lawyers engage in a diverse set of legal practices,

including mergers and acquisitions, antitrust litigations, complex patent and other intellectual

property matters, bet-the-company white collar and regulatory cases, and multi-billion-dollar

litigations. The Report's broad synthesis of rates, based as it is on this heterodox population, is

ill-tailored to judging the rates in this case, which involves a distinct practice area (under the

IDEA) and garden-variety work within it (in which most lawyer time was spent preparing for

quotidian administrative hearings before an IHO). The Court accordingly affords the Report

little weight in its analysis.

14

The same defect inheres in the 50th Annual Survey of Law Firm Economics and NALFA's 2022 Litigation Hourly Rate Survey and Report, on which J.G. also relies. *Id.*, Exs. 4–5. The organizations who prepare these annual reports draw data from general surveys sent out via email to their mailing lists. The reports are not focused on lawyers who specialize in special education representations. As such, the surveys do no more than summarize the hourly rates charged by litigators in New York, regardless of practice area or level of experience. Such aggregated statistics are not a reliable gauge of whether J.G.'s requested rates are "in line with those prevailing in the community for *similar services* by lawyers of *reasonable comparable skill, experience, and reputation.*" *M.L. ex rel. M.P. v. Bd. of Educ.*, No. 02 Civ. 4288, 2003 WL 1057476, at *2 (S.D.N.Y. Mar. 10, 2003) (emphases added) (citations omitted). J.G. has not shown that the litigators covered by the two reports are fair comparators—in services rendered or in skill, experience, and reputation—for the attorneys who worked on the present case. These surveys, too, merit little weight here.

J.G. next urges that the Cuddy Law Firm's rates are comparable to those covered by the *Laffey* Matrix. The original *Laffey* Matrix debuted in 1983 in an employment discrimination case, *Laffey v. Nw. Airlines, Inc.,* 572 F. Supp. 354 (D.D.C. 1983), and soon became "the most commonly used fee matrix" for lawyers who practice complex federal litigation in the D.C. Circuit. *Eley v. District of Columbia*, 793 F.3d 97, 100 (D.C. Cir. 2015). The *Laffey* Matrix was introduced to capture "the prevailing rates for 'complex federal litigation' in Washington, D.C. legal practice." *B.J. v. District of Columbia*, No. 19 Civ. 2163 (TSC) (ZMF), 2020 WL 8512639, at *2 (D.D.C. Nov. 9, 2020), *report and recommendation adopted*, No. 19 Civ. 2163 (TSC) (ZMF), 2021 WL 5992052 (D.D.C. Feb. 10, 2021) (citation omitted). The *Laffey* Matrix does not have any meaningful bearing on this case, for two reasons. First and most important,

J.G.'s case, involving routine administrative hearings in which only limited issues were contested, is a far cry from qualifying as a complex federal litigation. Indeed, in general, courts have found the Matrix inapplicable to IDEA litigation. *See Reed v. District of Columbia*, 843 F.3d 517, 525 (D.C. Cir. 2016) (affirming decision finding appellants to have failed to meet their burden to prove that IDEA cases fall within the area of "complex federal litigation"); *Cox v. District of Columbia*, 264 F. Supp. 3d 131, 143 (D.D.C. 2017) ("Courts in this district generally do not recognize IDEA litigation as complex when it comes to fee awards."). Second, this case has not been litigated in Washington, D.C. "No court in this Circuit has approved the use of the *Laffey* Matrix to determine the rates of lawyers practicing in New York." *N.G.B. v. N.Y.C. Dep't of Educ.*, No. 21 Civ. 11211 (LJL), 2023 WL 2711753, at *11 (S.D.N.Y. Mar. 30, 2023); *see Litkfosky v. P&L Acquisitions, LLC*, No. 15 Civ. 5429 (DRH) (AKT) 2016 WL 7167955, at *11 (E.D.N.Y. Aug. 19, 2016), *report and recommendation adopted*, 2016 WL 7168069 (E.D.N.Y. Dec. 8, 2016) (noting that no case in the Second Circuit has approved use of any form of the *Laffey* Matrix in assessing fees for lawyers outside Washington, D.C. metropolitan area, and citing cases to that effect); *In re Terrorist Attacks on Sept. 11, 2001*, No. 03 MDL 1570 (GBD) (FM) 2015 WL 6666703, at *8–9 (S.D.N.Y. Oct. 28, 2015), *report and recommendation adopted*, 2015 WL 9255560 (S.D.N.Y. Dec. 18, 2015) (noting that *Laffey* Matrix is intended for use in the D.C. area).

The Cuddy Law Firm also states that its requested hourly rates are supported by feedback it received from the artificial intelligence tool "ChatGPT-4." Pl. Mem. at 16; *see also* Dkt. 19 ("Kopp Decl."). In fairness, the Cuddy Law Firm does not predominantly rely on ChatGPT-4 in advocating for these billing rates. It instead presents ChatGPT-4 as a "cross-check" supporting the problematic sources above. Pl. Mem. at 16. As such, the Court need not dwell at length on

16

this point.  It suffices to say that the Cuddy Law Firm's invocation of ChatGPT as support for its aggressive fee bid is utterly and unusually unpersuasive.  As the firm should have appreciated, treating ChatGPT's conclusions as a useful gauge of the reasonable billing rate for the work of a lawyer with a particular background carrying out a bespoke assignment for a client in a niche practice area was misbegotten at the jump.  In two recent cases, courts in the Second Circuit have reproved counsel for relying on ChatGPT, where ChatGPT proved unable to distinguish between real and fictitious case citations.  In *Mata v. Avianca, Inc.*, Judge Castel sanctioned lawyers who "abandoned their responsibilities when they submitted non-existent judicial opinions with fake quotes and citations created by the artificial intelligence tool ChatGPT."  No. 22 Civ. 1461 (PKC), 2023 WL 4114965, at *1 (S.D.N.Y. June 22, 2023).  And in *Park v. Kim*, the Second Circuit referred an attorney to the Circuit's Grievance Panel for further investigation after finding that her brief relied on "non-existent authority" generated by ChatGPT.  91 F.4th 610, 615 (2d Cir. 2024).  In claiming here that ChatGPT supports the fee award it urges, the Cuddy Law Firm does not identify the inputs on which ChatGPT relied.  It does not reveal whether any of these were similarly imaginary.  It does not reveal whether ChatGPT anywhere considered a very real and relevant data point: the uniform bloc of precedent, canvassed below, in which courts in this District and Circuit have rejected as excessive the billing rates the Cuddy Law Firm urges for its timekeepers.  The Court therefore rejects out of hand ChatGPT's conclusions as to the appropriate billing rates here.  Barring a paradigm shift in the reliability of this tool, the Cuddy Law Firm is well advised to excise references to ChatGPT from future fee applications.

Having considered (although largely discounting) the resources which J.G. urges be used in determining appropriate billing rates, the Court next considers the *Johnson* factors, and the

rates courts in this District have found reasonable awarded for the Cuddy Law Firm's attorneys, and attorneys with comparable skill and experience litigating special education matters.

### 2.  Michael Cuddy, Andrew Cuddy, and Jason Sterne

J.G. seeks an hourly rate of $550 for attorneys Michael Cuddy, Andrew Cuddy, and Jason Sterne, with a $50 rate increase for work billed in 2023.  The DOE argues that these rates are unreasonable.  It urges instead rates of $367.50 for work in the administrative hearings, and $200 for work in this federal fees action.  Opp. Mem. at 14.

The three attorneys are experienced in special education law.  Andrew Cuddy is a 1996 law school graduate who has been litigating special education matters since 2001.  Dkt. 21 ¶ 18. Michael Cuddy is a 1988 law school graduate who has been practicing special education law for more than 10 years.  *Id.* ¶ 19.  And Sterne is a 1996 law school graduate who has specialized in IDEA litigation since 2005.  *Id.* ¶ 20.

Courts in this District have recently approved awards for the work of senior Cuddy Law Firm attorneys, including these three, at rates between $360 and $420 per hour, well below J.G.'s requested rates, and have done so in proceedings more contested than this.  *See, e.g., M.H. v. N.Y.C. Dep't of Educ.*, No. 20 Civ. 1923 (LJL), 2021 WL 4804031 at *13 (S.D.N.Y. Oct. 13, 2021), *aff'd*, 71 F.4th 120 (2d Cir. 2023) (approving $420 hourly rate for Cuddy Law Firm senior attorneys Andrew Cuddy and Sterne in contested case with lengthy proceedings and cross-examination); *Y.S. v. N.Y.C. Dep't of Educ.*, No. 21 Civ. 2159 (RA), 2022 WL 4096071 at *3 (S.D.N.Y. Sept. 6, 2022) (approving hourly rate of $400 for Andrew Cuddy); *F.N. v. N.Y.C. Dep't of Educ.*, No. 21 Civ. 3379 (JPO), 2022 WL 3544128 at *4 (S.D.N.Y. Aug. 18, 2022) (approving $375 hourly rate for CLF senior attorneys, including Andrew Cuddy, where DOE mounted no defense and case involved a single 41-minute hearing); *H.C. v. N.Y.C. Dep't of*

*Educ.*, No. 20 Civ. 844 (JLC), 2021 WL 2471195, at *6 (S.D.N.Y. June 17, 2021) (awarding rate of $360 per hour for Cuddy Law Firm attorneys Michael Cuddy, Andrew Cuddy, and Sterne). Because this matter spanned two administrative proceedings in which some issues were contested, the Court finds that awarding senior Cuddy Law Firm attorneys an hourly rate at the upper bound of this range is appropriate. However, the $550/$600 hourly rate sought by J.G. is well above what a reasonable client would pay. Considering the case law, along with the *Johnson* factors, the Court finds a rate of $400 per hour for the work of each of these three attorneys reasonable.

### 3. Erin Murray

J.G. seeks an hourly rate of $375 for junior associate Erin Murray, who served as the lead attorney and billed by far the most hours during the second administrative proceeding. Murray was admitted to practice law in New York in 2020 after graduating magna cum laude from Barry University's Dwayne O. Andreas School of Law in May 2019. A. Cuddy Decl. ¶ 21. The DOE argues that Murray's hourly rate should be $200.

J.G.'s proposed rate for Murray is above the range of rates typically approved by courts in this District for junior associates in IDEA litigation. "For associates with three or fewer years of experience in such litigation, courts in this District have typically approved rates of $150–$275." *C.D.*, 2018 WL 3769972, at *7 (citing *J.S. ex rel. Z.S. v. Carmel Cent. Sch. Dist.*, No. 10 Civ. 8021 (VB), 2011 WL 3251801, at *6 (S.D.N.Y. Jul. 26, 2011) (awarding first- and second-year associates rates of $150 to $175 per hour in IDEA litigation)); *L.V. v. N.Y.C. Dep't of Educ.*, 700 F. Supp. 2d 510, 519–20 (S.D.N.Y. 2010) (awarding $275 for junior attorney with one-to-three years' experience); *R.P. v. N.Y.C. Dep't of Educ.*, No. 21 Civ. 4054 (JMF), 2022 WL

1239860, at *8 (S.D.N.Y. Apr. 27, 2022), *aff'd sub nom. H.C. v. N.Y.C. Dep't of Educ.*, 71 F.4th 120 (2d Cir. 2023) (using $150 rate for Murray).

Murray was admitted to the bars of Florida in 2019 and New York in 2020. A. Cuddy Decl. ¶ 21. Shortly thereafter, in October 2020, she joined the Cuddy Law Firm as an associate attorney. Pl. Mem. at 11. Four months later, in February 2021, she was assigned as lead attorney for Case No. 221890. Murray Decl. ¶ 6. Despite her short tenure at the law firm, Murray ably handled the case and achieved positive results for J.G. She was responsible for the bulk of the firm's work in the second administrative proceeding: she led hearing preparations, communicated with DOE and J.G., attended pre-hearing conferences, argued on behalf of J.G. at the hearing, and drafted and submitted post-hearing briefs.

In light of Murray's effective performance in the second administrative proceeding, which involved contested issues and a degree of procedural complexity, the Court finds it appropriate to award an hourly rate towards the upper end of the $150–$275 range generally awarded in this District for junior associates in IDEA administrative proceedings. CLF has not, however, justified a $375 hourly rate. Accordingly, this Court finds $250 an appropriate hourly rate for Murray here.

### 4. Kevin Mendillo

J.G. seeks an hourly rate of $500 for Kevin Mendillo. He was admitted to the New York bar in 2011 and joined the Cuddy Law Firm in 2014, where he has litigated special education matters for almost a decade. A. Cuddy Decl. ¶ 22. J.G.'s request for a $500 billing rate is out of line with the rates courts in this District have found appropriate for similarly experienced IDEA attorneys, including Mendillo himself. *See, e.g., H.W. v. N.Y.C. Dep't of Educ.*, No. 20 Civ. 10591 (RA), 2022 WL 541347, at *3 (S.D.N.Y. Feb. 23, 2022), *aff'd sub nom., H.C. v. N.Y.C.*

*Dep't of Educ.*, 71 F.4th 120 (2d Cir. 2023) (using $300 rate for Mendillo); *Y.S.*, 2022 WL

4096071, at *3 (using $300 rate for Mendillo); *C.D.*, 2018 WL 3769972, at *7 (finding in 2018

that a rate of $300 per hour was appropriate for a lawyer with 10 years' experience in general

litigation). In consideration of the *Johnson* factors and Mendillo's level of experience as of the

proceedings in this case, the Court finds $310 an appropriate hourly rate.

### 5. Justin Coretti, Benjamin Kopp, Francesco Antorino, Kenneth Bush

J.G. seeks an hourly rate of $425 for mid-level associates Justin Coretti, Benjamin Kopp,

Francesca Antorino, and Kenneth Bush. As to Coretti, the DOE argues for a $300 hourly rate for

his work during the administrative proceeding, and $200 for his work in this federal fees action.

DOE does not propose an alternative hourly rate for the other mid-level associates.

Coretti is a 2012 law school graduate who has been litigating special education matters

since 2016. A. Cuddy Decl. ¶ 25. Kopp is a 2015 law school graduate who has been litigating

special education matters since joining the firm in 2018. *Id.* ¶ 26. Bush is a 2015 law school

graduate who joined the firm in January 2016. *Id.* ¶ 24. Antorino is a 2017 law school graduate

who began litigating special education matters immediately after graduation. *Id.* ¶ 23.

J.G.'s proposed rate for the four associates is above the range of rates typically approved

by courts in this District for junior associates in IDEA litigation, and above the range of rates

approved for Coretti, the most senior of the group. *See J.R.*, 2021 WL 3406370, at *4 (setting

$250 hourly rate for Coretti, where $350–$375 per hour was requested); *M.H.*, 2021 WL

4804031, at *14 (setting $280 hourly rate for Coretti, where he worked on the administrative

stage of an IDEA case, including by preparing witnesses for testimony and attending hearings).

The Court, recognizing that these four attorneys have greater experience than Murray, and less

than Andrew Cuddy, Michael Cuddy, Mendillo, and Sterne, and having considered the *Johnson* factors, finds $300 is a reasonably hourly rate for Coretti, Kopp, Antorino, and Bush.

### 6. Paralegal Time

J.G. seeks an hourly rate of $225 for paralegals Amanda Pinchak, Allyson Green, Cailin O'Donnell, ChinaAnn Reeve, and Shobna Cuddy.[9]  Shobna Cuddy is the Cuddy Law Firm's senior paralegal and has worked there as a paralegal and office manager since 2007.  A. Cuddy Decl. ¶ 27.  Green has an associate degree and is currently pursuing a bachelor's degree from Clarion University.  *Id.* ¶ 30.  O'Donnell has a bachelor's degree and worked as a paralegal at the firm from 2019 to 2022.  *Id.* ¶ 28.  Reeve has an associate degree and is working toward a bachelor's degree.  She joined the firm in 2021.  *Id.* ¶ 29.  J.G. does not provide any information about Pinchak's qualification.  DOE argues that all paralegals' hourly rates should be $100.

J.G.'s proposed hourly rate for the paralegals far exceeds the prevailing rate in this District, as reflected in numerous recent decisions.  Decisions involving the Cuddy Law Firm have approved fee awards with hourly rates of $100 to $125 for paralegal work.  *See, e.g.*, *J.R.*, 2021 WL 3406370, at *4 (awarding $100 per hour for Cuddy Law Firm paralegals in IDEA case); *H.C.*, 2021 WL 2471195, at *7 (same); *M.D.*, 2018 WL 4386086, at *3 (awarding $100–$120 per hour for Cuddy Law Firm paralegals); *C.D.*, 2018 WL 3769972, at *7 (awarding $125 hourly rate for experienced Cuddy Law Firm paralegal with more than entry-level qualifications and $100 hourly rate for inexperienced paralegal and for Shobna Cuddy, who had only entry-level qualifications, in IDEA case).  And this case has not presented the challenges paralegals may encounter in complex commercial cases that go to trial—challenges which, for paralegals

---

[9] J.G. also seeks $225 as the rate for administrative tasks that attorneys performed (and for which they billed at a paralegal rate).

with significant experience, have justified $200 rates. *Cf. Beastie Boys v. Monster Energy Co.*, 112 F. Supp. 3d 31, 56–57 (S.D.N.Y. 2015).

Consistent with these authorities, the Court finds $125 per hour a reasonable rate for work performed in this matter by an experienced paralegal with more than entry-level qualifications. The Court will apply that rate to Shobna Cuddy's work.

However, as to Green, O'Donnell, Pinchak, and Reeve, the Court finds an hourly rate of $110 warranted given their comparative inexperience. J.G. bears the burden of providing evidence to support her fee application, including as to the relevant qualifications and experience of the various attorneys and paralegals that worked on her case. *See Torres v. City of New York*, No. 07 Civ. 3473 (GEL), 2008 WL 419306, at *2 (S.D.N.Y. Feb. 14, 2008) ("Although it is his burden to do so, plaintiff presents no evidence regarding the skills, qualifications, or experience of the paralegal here."). When such evidence has not been provided, courts typically award fees at the bottom of the customary fee range. *See, e.g., L.V.*, 700 F. Supp. 2d at 523 ("If plaintiffs had provided no information about the paralegals' levels of experience, an award at the lower end of the range might be appropriate."); *Robinson v. City of New York*, No. 05 Civ. 9545 (GEL), 2009 WL 3109846, at *5 (S.D.N.Y. Sept. 29, 2009) ("While defendants are correct that the burden is on the moving party to show that the requested fees are reasonable, plaintiffs' request of $100 per hour is on the low end of the customary range in this district and therefore commensurate with the presumed inexperience of plaintiffs' paralegal staff."); *Torres*, 2008 WL 419306, at *2 ("[C]ompensation must be made near the lower end of the market range" given lack of evidence regarding paralegals' qualifications). J.G. did not address Green's or Pinchak's paralegal experience. Reeve had two months of paralegal experience at the time she worked on J.G.'s case; and O'Donnell had less than one year of paralegal experience at the start of the first

23

administrative proceeding and about two years' experience at the start of the second. Accordingly, an $110 hourly rate—which recognizes the passage of time since a number of the decisions approving a $100 rate for comparable work—is appropriate.

## C. Reasonable Hours

As reviewed above, the underlying IDEA litigation was not unusually complicated or burdensome. It involved two administrative proceedings. The first entailed several short pre-hearing conferences before the IHO, and a two-session hearing, at which J.G. presented four witnesses and DOE presented none, and at which DOE conceded liability. The second likewise entailed several short pre-hearing conferences, and a two-session hearing, with each session lasting around two hours, at which J.G. presented four witnesses and DOE presented only one.

In connection with the administrative proceedings, the Cuddy Law Firm billed 184.4 hours of attorney time and 42 hours of paralegal time (226.4 hours total). In connection with this fees litigation, the firm billed 39.4 hours of attorney time and 11.1 hours of paralegal time (50.5 hours total). DOE argues that the reported hours at both stages were excessive. For the reasons that follow, the Court agrees.

### 1. Administrative Proceedings

In various respects, the Court finds excessive or inadequately explained the hours on which the Cuddy Law Firm bases its fee request.

As to the first administrative proceeding (Case No. 185427), the firm's time entries begin on January 28, 2019, five months before Sterne began drafting the due process complaint. A. Cuddy Decl., Ex. 19 at 8 (Sterne began drafting due process complaint on June 28, 2019). During that period, CLF billed more than 10 hours' time, during which Sterne and Pinchak appear, without explanation, to have billed J.G. for reviewing the same records. *Id.* at 2–8. It

then took Sterne an unexplained 3.9 hours to draft a three-page boilerplate complaint, for which the law firm charged J.G. $2,155.3. *Id.* at 8.

As to the second proceeding (Case No. 228190), the firm began billing on April 7, 2020, 16 months before Murray began drafting the due process complaint. *Id.*, Ex. 20 (initial drafting of complaint on August 24, 2021). The Cuddy Law Firm billed close to 30 hours before drafting the complaint. *Id.* at 2–14. J.G. does not explain the need for such work; such an explanation was particularly warranted given the firm's preexisting familiarity with G.G.'s condition and circumstances arising from its handling of the first administrative action. And the relief requested in the second action was based on the same administrative record underlying the first. Murray then, by the Court's count, billed some 15 hours drafting the second complaint, for which the law firm charged J.G. more than $5,000. *Id.* The Court finds those hours excessive. The complaint is a simple 11-page document, which recites G.G.'s educational history and makes boilerplate requests for relief. It does not reflect sophisticated legal or factual analysis. Without a sound explanation, it is unreasonable to shift responsibility from J.G. to DOE for this much unjustified billable time.

Across the two cases, the Cuddy Law Firm then billed a total of 34.1 hours to draft its closing brief or statement. A. Cuddy Decl., Ex. 19 at 22–23, 30 (11 hours); *id.*, Ex. 20 at 30–34 (23.1 hours). The two briefs totaled 31 pages. Murray Decl. ¶ 91; *see id* (14-page closing statement); Cuddy Decl., Ex. 2 at 1–17 (17-page closing brief). The 17-page brief included 12 pages of procedural history and background facts, Cuddy Decl., Ex. 2 at 1–12, which largely reproduced information in the due process complaint. It should not have taken Michael Cuddy, an experienced IDEA lawyer, 11 hours to draft this document.

There was also significant overlap between the two administrative proceedings. They involved the same student, whose learning disability and educational needs had not materially changed between January 28, 2019 (date of the first billing entry) to February 24, 2023 (date of the last billing entry). A. Cuddy Decl., Ex. 19–20. The proceedings also temporally overlapped. The firm billed hours for the first proceeding covering January 28, 2019, to February 24, 2023, *id.*, Ex. 19; and, for the second proceeding, covering April 7, 2020, to August 31, 2022. *Id.*, Ex. 20. The assignment of common personnel to the two proceedings should have been a source of efficiency. The firm then spent nearly twice the attorney time on the second proceeding as the first. *Id.*, Ex. 19 (68.3 hours attorney time billed for Case No. 185427); *Id.*, Ex. 20 (116.10 hours attorney time billed before for Case No. 221890). The Court recognizes that the distinct needs of the second proceeding, at which DOE asserted that it had provided a FAPE but was found not to have done so, justified meaningful new work. The submissions in support of the fee award, and the firm's time records, however, do not make clear why 116.10 attorneys' hours were justified at this stage.

In evaluating fee applications, courts must make "a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended." *See Lunday v. City of Albany*, 42 F.3d 131, 134 (2d Cir. 1994). Considering the inefficiencies noted above, the overlap between the two proceedings, the relative simplicity of the matter, and the absence of detailed explanations for much of the hours logged, the Court finds that an across-the-board 20% reduction for the 226.4 total hours billed is warranted to make the Cuddy Law Firm's claimed hours reasonable. This reduction is in line with the reductions applied by courts in this District involving underlying administrative actions of similar complexity. *See, e.g.*, *R.G.*, 2019 WL 4735050, at *4 (18% reduction of 97.3 billed

hours for administrative action that included an impartial hearing that consisted of three sessions totaling four hours); *H.C.*, 2021 WL 2471195, at *10  (20% reduction of 215.5 hours billed in two related administrative proceedings because the first hearing was uncontested and the second hearing "contained much of the same information as the [due process complaint] for the first hearing"); *see also McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA Pension Tr. Fund*, 450 F.3d 91, 96 (2d Cir. 2006) ("A district court may exercise its discretion and use a percentage deduction as a practical means of trimming fat from a fee application." (internal citation marks omitted)).

In total, the Court reduces the hours billed for the administrative proceedings by 45.28 hours. This yields 181.12 hours, a figure the Court finds reasonable to have incurred.

### 2. Federal Fees Action

Courts in this District also have discounted fee requests for the time spent in follow-on litigation over the appropriate fee award.  Such proceedings, as here, concern the "simple and straightforward issue" of establishing "the reasonable amount of fees and costs that Plaintiff's attorneys should be paid for prevailing on behalf of the Plaintiff," but courts have often found the hours claimed on such fee applications unjustified. *J.R.*, 2021 WL 3406370, at *6 (citation omitted); *see also id.* (reducing by 25% the Cuddy Law Firm's 82.5 hours billed for fees litigation in this District); *R.G.*, 2019 WL 4735050, at *5 (reducing by approximately 26% the firm's 59.9 hours billed for fees litigation, given case's simplicity); *H.A. v. N.Y.C. Dep't of Educ.*, No. 20 Civ. 10785 (PAE), 2022 WL 580772, at *10 (S.D.N.Y. Feb. 25, 2022) (applying 20% reduction in hours billed for fee litigation).

For the simple fee application here, the Cuddy Law Firm has billed for 50.50 hours of work.  The Court finds this request similarly excessive.

At the threshold, the Cuddy Law Firm seeks recompense for the work of seven attorneys and four paralegals on the fee litigation. The firm does not attempt to justify this level of staffing on a routine fee application, a species of project which, in the Court's experience supervising IDEA fee litigations, is often handled by a single attorney and a single paralegal. A discount of the requested fee is merited, at the outset, for the inefficiencies inherent in spreading the work on this project across 11 timekeepers. *See, e.g.*, *L.V. v. N.Y.C. Dep't of Educ.*, 700 F. Supp. 2d 510, 525 (S.D.N.Y. 2010) (reducing plaintiffs' requested hours by an additional 5% because of excessive overstaffing and duplicative work when law firm used 29 attorneys and 19 non-legal staff in IDEA class action); *Sabatini v. Corning-Painted Post Area Sch. Dist*, 190 F. Supp. 2d 509, 521 (W.D.N.Y. 2001) (justifying hour reduction because of duplicative work resulting from unnecessary timekeepers attending hearings and conferences); *F.R. v. N.Y.C. Dep't of Educ.*, No. 22 Civ. 1776 (VEC) (GWG), 2023 WL 4991118, at *8 (S.D.N.Y. Aug. 4, 2023), *report and recommendation adopted*, 2023 WL 5950686 (S.D.N.Y. Sept. 13, 2023) (same).

There are other inefficiencies or unexplained areas of work. The fee action was initiated on February 6, 2023, with the filing of an eight-page complaint. *See* Compl. But the hours for which the Cuddy Law Firm seeks to be awarded for its fee application began accruing nearly seven months earlier, on August 15, 2022. The firm seeks recompense for 10.6 hours it billed prior to the filing of the fees complaint. A. Cuddy Decl., Ex. 21 at 2–7. Several billing entries during this period do not appear to have any relationship to the researching and drafting of the fees complaint. Instead, these reflect the making of phone calls and the sending of emails by paralegals and attorneys related to the mechanics of receiving "tuition deposit reimbursement" from DOE, scheduling G.G.'s vocational assessment, and finding educational providers. *Id.* at 2. Other entries reflect signing, filling out, and correcting forms authorizing reimbursement for

G.G.'s tuition and tutoring. *Id.* at 3. The Cuddy Law Firm does not explain how these logistical tasks advanced the present fee action. The firm claims to have spent 3.9 hours drafting and preparing the complaint. A. Cuddy Dec., Ex. 21. Those hours too are unjustified. The eight-page complaint consists of a series of single-sentence paragraphs that simply summarize the administrative phase of the case—all information readily pasted from the previous due process complaints—followed by boilerplate recitations of the causes of action customary in IDEA litigation.

A review of the Cuddy Law Firm's submissions after the fees complaint was filed also bespeaks "highly inefficient practice[s]." *B.B. v. N.Y.C. Dep't of Educ.*, No. 17 Civ. 4255 (VEC) (SDA), 2018 WL 1229732, at *3 (S.D.N.Y. Mar. 8, 2018). The firm seeks fees for almost 27 hours of preparing declarations. The declarations submitted, however, are disorganized, duplicative, and difficult to parse. Of the eight declarations and the more than 30 exhibits that the firm filed in support of its fee application, Dkts. 15–21, 31, only a handful have been useful to resolving the present motion. These hours also appear to have been elevated by the firm's aggressive pursuit of outsized billing rates based on dubious databases. As reviewed above, the Court has discounted various sources which some of the declarations endorse as support for the firm's proposed billing rates. *See, e.g.*, A. Cuddy Decl., Exs. 3, 6, 7 (Real Rate Report), Ex. 4 (ASLFE Survey), Ex. 5 (NALFA Survey), Ex. 8 (*Laffey* Matrix). Pruning the firm's claimed hours is necessary to tame the unjustified and "costly exercise of preparing such [] voluminous declaration[s]." *H.A.*, 2022 WL 580772, at *11.

The fee request in this case "ought to have been routine." *Id.* J.G. filed and served the fees complaint and then moved for summary judgment on a straightforward issue. Such tasks should not have taken 50.5 hours to execute. Accordingly, the Court finds that an across-the

board reduction of hours by 30% is necessary to bring the fee request into line with reasonable billing practices. *See, e.g.*, *Mr. & Mrs. B. v. Weston Bd. of Ed.*, 34 F. Supp. 2d 777, 783 (D. Conn. 1999) (reducing attorneys' fee award by 30% in IDEA case); *C.A. v. N.Y.C. Dep't of Educ.*, No. 20 Civ. 2101 (AMD) (VMS), 2022 WL 673272, at *1 (E.D.N.Y. Mar. 7, 2022) (adopting report and recommendation's 30% reduction in attorney hours in IDEA case); *HomeAway.com, Inc. v. City of New York*, 523 F. Supp. 3d 573, 593 (S.D.N.Y. 2021) (reducing fee award by 25%); *Beastie Boys*, 112 F. Supp. 3d at 57 (reducing fee award by 30% and citing cases).

### D. Costs

A district court may award reasonable costs to the prevailing party in IDEA cases. *See* 20 U.S.C. § 1415(i)(3)(B); *see also Murphy*, 548 U.S. at 297–98 (2006) (holding "costs," as used in 20 U.S.C. § 1415(i)(3)(B), to refer to the list set out in 28 U.S.C. § 1920, the statute governing taxation of costs in federal court); *H.C.*, 2021 WL 2471195, at *11 (S.D.N.Y. June 17, 2021) ("A district court may award reasonable costs to the prevailing party in IDEA cases." (quoting *C.D.*, 2018 WL 3769972, at *12)).

J.G. seeks $262.12 in costs at the administrative level and $420 at the federal level. Because these costs are reasonable, the Court approves them.

### E. Post-Judgment Interest

The Court also awards, as required by 28 U.S.C. § 1961, post-judgment interest. *See* 28 U.S.C. § 1961; *Lewis v. Whelan*, 99 F.3d 542, 545 (2d Cir. 1996) ("The award of post-judgment interest is mandatory on awards in civil cases as of the date judgment is entered.").

### F. Fee Cap

The IDEA prohibits all awards for services rendered *after* a written offer of settlement is made to a parent if: (1) "the offer is made within the time prescribed by Rule 68 of the Federal

Rules of Civil Procedure or, in the case of an administrative proceeding, at any time more than 10 days before the proceeding begins"; (2) "the offer is not accepted within 10 days"; and (3) "the court or administrative hearing officer finds that the relief finally obtained by the parents is not more favorable to the parents than the offer of settlement." 20 U.S.C. § 1415(i)(3)(D)(i); *see also S.M. v. Taconic Hills Cent. Sch. Dist.*, No. 11 Civ. 1085 (LEK) (RFT), 2013 WL 1180860, at *2 (N.D.N.Y. Mar. 20, 2013).

Here, the DOE argues that the statutory fee cap applies, provided that the Court finds an aggregate award of less than $54,300 warranted for the work performed through May 26, 2023. That is because, as is undisputed, the DOE that day offered to settle the case for $54,300.00, but J.G. did not accept the offer. The DOE's analysis is legally correct. It is also factually applicable, because, based on the Court's analysis above, as of May 26, 2023, J.G. was entitled to a fee-and-cost award below the $54,300 offered by the DOE. The Court therefore is obliged to cap the award so as not to award J.G. fees and costs that accrued after May 26, 2023.

All of the work performed on the two administrative actions was complete before May 26, 2023. The work on the first administrative action was complete on February 24, 2023, A. Cuddy Decl., Ex. 19 at 31 (last billing entry February 24, 2023); and the work on the second administrative action was complete on August 31, 2022, *id.*, Ex. 20 at 34 (last billing entry August 31, 2022). Applying the hourly rates the Court has found reasonable to the hours it has found reasonable, the total award of fees and costs across the two administrative actions is $50,677.72.

## Case No. 185427

| Attorney | Rate | Hours | Total |
|---|---|---|---|
| Andrew Cuddy | $400.00 | 3.92 | $1,568.00 |
| Jason Sterne | $400.00 | 6.56 | $2,624.00 |
| Michael Cuddy | $400.00 | 44.16 | $17,664.00 |
| Total Attorney Fees | | 54.64 | $21,856.00 |

| Paralegal | Rate | Hours | Total |
|---|---|---|---|
| Allyson Green | $110.00 | 0.08 | $8.80 |
| Amanda Pinchak | $110.00 | 4.16 | $457.60 |
| Cailin O'Donnell | $110.00 | 8.00 | $880.00 |
| Erin Murray | $110.00 | 0.40 | $44.00 |
| Shobna Cuddy | $125.00 | 2.64 | $330.00 |
| Total Paralegal Fees | | 15.28 | $1,720.40 |

## Case No. 221890

| Attorney | Rate | Hours | Total |
|---|---|---|---|
| Andrew Cuddy | $400.00 | 2.72 | $1,088.00 |
| Erin Murray | $250.00 | 78.32 | $19,580.00 |
| Michael Cuddy | $400.00 | 5.68 | $2,272.00 |
| Justin Coretti | $300.00 | 6.16 | $1,848.00 |
| Total Attorney Fees | | 92.88 | $24,788.00 |

| Paralegal | Rate | Hours | Total |
|---|---|---|---|
| Allyson Green | $110.00 | 2.96 | $325.60 |
| ChinaAnn Reeve | $110.00 | 9.36 | $1,029.60 |
| Cailin O'Donnell | $110.00 | 3.60 | $396.00 |
| Shobna Cuddy | $125.00 | 2.40 | $300.00 |
| Total Paralegal Fees | | 18.32 | $2,051.20 |

## Costs

| Hearing | Expense | | Cost |
|---|---|---|---|
| Case No. 185427 | Postage | | $3.50 |
| | Printing Cost | | $151.00 |
| Case No. 221890 | Postage | | $6.12 |
| | Printing Cost | | $101.50 |
| Total Costs | | | $262.12 |

The fees and costs incurred in the federal fees litigation, however, straddled May 26,

2023.  The charts below summarize the fees and costs incurred in this action through and

including May 26, 2023, again applying the hourly rates found reasonable to the hours found reasonable.

### SDNY Action: Fees and Costs Through May 26, 2023

| Attorney | Rate | Hours | Total |
|---|---|---|---|
| Andrew Cuddy | $400 | 0.63 | $252.00 |
| Benjamin Kopp | $300 | 0.14 | $42.00 |
| Erin Murray | $250 | 0 | $0 |
| Francesca Antorino | $300 | 1.26 | $378.00 |
| Kenneth Bush | $300 | 1.96 | $588.00 |
| Kevin Mendillo | $310 | 0.21 | $65.10 |
| Michael Cuddy | $400 | 0 | $0 |
| Total Attorney Fees | | 4.2 | $1325.10 |

| Paralegal | Rate | Hours | Total |
|---|---|---|---|
| Cailin O'Donnell | $110.00 | 4.48 | $492.80 |
| ChinaAnn Reeve | $110.00 | 0.91 | $100.01 |
| Francesco Antorino | $110.00 | 0 | $0 |
| Shobna Cuddy | $125.00 | 0.42 | $52.50 |
| Total Paralegal Fees | | 5.81 | $645.31 |

| Expense | Cost |
|---|---|
| Filing Fee | $402.00 |

The fee litigation thus added $2,372.41 in compensable fees and costs, as of May 26, 2023. Adding this sum to the compensable fees and costs from the administrative proceeding, yields an award of $53,050.13. Because that figure is below the DOE's unaccepted settlement offer of $54,300 made that day, the Court must apply the statutory cap. *See, e.g.*, *R.P.*, 2022 WL 1239860, at *6 ("no fees should be awarded for costs or work performed after July 7, 2021, when the DOE made a written offer of settlement" because total fees and costs to which plaintiff was entitled as of that date was lower than DOE's settlement offer); *H.C.*, 2021 WL 2471195, at *10 (declining to award fees or costs incurred after date of DOE's written offer because the plaintiffs were entitled to less in fees and costs); *O.R. v. N.Y.C. Dep't of Educ.*, 340 F. Supp. 3d 357, 371 (2018) (same).

J.G. is thus entitled to $53,050.13, broken out as follows.

**Summary Chart of Approved Fees and Costs Through May 26, 2023**

| Action | Attorneys' Fees | Paralegal Fees | Costs | Total |
|---|---|---|---|---|
| Case No. 185427 | $21,856.00 | $1,720.40 | $154.5 | $23,730.90 |
| Case No. 221890 | $24,788.00 | $2,051.20 | $107.62 | $26,946.82 |
| SDNY Action | $1325.10 | $645.31 | $402 | $2,372.41 |
| Total | $47,969.10 | $4,416.91 | $664.12 | $53,050.13 |

## CONCLUSION

For the reasons stated, the Court grants J.G.'s motion for an award of fees and costs, but in an amount below that sought. J.G. is awarded $52,386.01 in fees and $664.12 in costs, for a total of $53,050.13, plus post-judgment interest at the applicable statutory rate. The Clerk of Court is respectfully directed to terminate the motion at Docket 14 and close the case.

SO ORDERED.

*Paul A. Engelmayer*

PAUL A. ENGELMAYER
United States District Judge

Dated: February 22, 2024
New York, New York